Brian J. Perkins (CA SBN 315870)
William H. Cross (CA SBN 337801)
LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: bperkins@levinsimes.com

Attorneys for Plaintiff K.O.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| K.O., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>RED LION HOTELS CORPORATION,<br><br>Defendant. | Case No.: 2:22-cv-11450<br><br>**COMPLAINT**<br>**Trafficking Victims Protection Reauthorization Act**<br>**[18 U.S.C. § 1595]**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff K.O., by and through the undersigned counsel, hereby respectfully submits her complaint for damages and makes the following averments:

**INTRODUCTION**

1. Sex trafficking is a form of modern-day slavery that exists illegally throughout the United States and globally and is furthered by public lodging establishments, including Defendant's branded hotels.

2. Defendant profits from sex trafficking by allowing criminals to brazenly operate in and out of its branded hotels throughout this country and has done so for years. Defendant permits criminals to parade their misconduct openly on Defendant's hotel premises, as Defendant reaps huge profits at the expense of human life, human rights, and human dignity.

3. Defendant's promotion of profits over people in its business model welcomes sex trafficking at its properties through ease of access for buyers, the ability to pay in cash (non-traceability), free Wi-Fi, and maintaining anonymity, privacy, and discretion. Defendant further refuses to educate its

COMPLAINT

branded staff and enforce anti-trafficking measures and reporting.

4.       Defendant Red Lion Hotels Corporation ("RLHC") knew and has known for more than a decade that sex trafficking runs rampant at its branded hotels.

5.       Rather than taking timely and effective measures to thwart this reality, Defendant chooses to profit off the exploitation of K.O. and others like her.  Intent on benefitting from the profit created by rooms rented for this explicit and apparent purpose, Defendant repeatedly ignores the open and obvious presence of commercial sex on its properties.

6.       Plaintiff K.O. is a survivor of sex trafficking who brings this action for damages under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

7.       From 2003 until 2013, K.O. was trafficked for commercial sex in Michigan at Defendant's hotels.  While K.O.'s trafficker initially presented himself as a boyfriend, he quickly became violent and sold her to buyers.

8.       K.O. endured coercion, psychological torment, and verbal abuse coupled with physical and sexual violence as her trafficker sold her throughout Defendant's properties.  Defendant knowingly permitted these commercial sex transactions at its branded hotels, valuing profits over people like K.O.

9.       K.O.'s trafficker used common methods of coercion, including but not limited to, maintaining control over her person and whereabouts as well as on social media, email, and phone accounts, alcohol, drugs, hitting, slapping, choking, beating, manipulation, humiliation, degradation, exhaustion, isolation, incurrence of debt, threats to her person, to her family, and to her children, and other methods to enforce her compliance.

10.      A continuing daily parade of buyers would arrive at Defendant's hotels, entering into rooms they either did not rent or did not rent for the purpose of an overnight stay.  One by one, dozens to hundreds of unrelated buyers used Defendant's hotel rooms and services to sexually exploit, rape, abuse, and physically assault K.O.

11.      Repeated acts took place with the actual and/or constructive knowledge of Defendant who systematically created ways to use trafficking victims as a means to increase its profits, including

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street  Suite 250
San Francisco  California 94111
415.426.3000 phone  •  415.426.3001 fax

COMPLAINT

implementing permissive policies, procedures, and Brand standards rather than taking concrete and effective steps to prevent, spot, or report trafficking at its branded hotels.

12.     As a direct and proximate result of Defendant's consistent refusals, and collective failure, to identify, stop, and prevent commercial sex trafficking at its properties, K.O. was trafficked for the purpose of commercial sex, sexually exploited, and victimized repeatedly at Defendant's hotels.

13.     K.O. brings this action for damages pursuant to the TVPRA, 18 U.S.C. § 1595, against Defendant, who enabled, harbored, held, facilitated, and financially benefitted from participation in a business venture Defendant knew, or should have known, to be engaging in commercial sex trafficking, sexual exploitation, and brutal victimization of K.O., and others, in violation of 18 U.S.C. § 1591(a).

**PARTIES**

14.     Plaintiff K.O. is a citizen of the United States of America and a resident of the State of Michigan.

    a.   Plaintiff is a "victim" survivor of trafficking pursuant to 22 U.S.C. § 7102(17) and 18 U.S.C. §§ 1591(a) and 1595(a) and a survivor of a "severe form of trafficking" as defined under 22 U.S.C. § 7102(16).

    b.   Due to the sensitive and private nature of K.O.'s allegations in this case, K.O. requests this Court permit her to proceed under a pseudonym and files a Motion for Protective Order pursuant to Federal Rule of Civil Procedure 26(c) herewith to ensure Defendant keeps her identity confidential throughout the pendency of the lawsuit and thereafter.[1]

    c.   The Federal Rules of Civil Procedure require pleadings to state the names of all

---

[1] Courts typically issue a protective order and allow a party to proceed under pseudonym when the party's privacy interests outweigh the general presumption of open judicial proceedings and possible prejudice to the opposing party. *See Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–69 (9th Cir. 2000) (reviewing cases and joining the 4th, 5th, 10th, and 11th Circuits in holding that a party may preserve their anonymity "when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity").

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street  Suite 250
San Francisco  California 94111
415.426.3000 phone  •  415.426.3001 fax

parties.[2] However, there are judicially recognized exceptions when the issues involved are of a sensitive and highly personal nature.[3] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.[4]

     d. Here, pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of highly personal and stigmatizing sexual information, including rape.[5] K.O. fears stigma from her family, friends, potential employers, and community, if her true identity is revealed in the public record. Further, K.O. fears for her safety and well-being if her name is not sealed and her trafficker can find her.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

---

[2] Fed. R. Civ. P. 10(a).

[3] *See Does I Thru XXIII*, 214 F.3d at 1068. In balancing the need to proceed anonymously, Courts must use "informed discretion" and consider all relevant factors. *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993). Courts therefore routinely find that preserving the plaintiff's privacy interests substantially outweighs the public's interest and risk of unfairness to the defendant where there are "sensitive and highly personal" issues and where "identification poses a risk of retaliatory physical or mental harm to the requesting party." *Id.* at 238; *see Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (same); *Doe v. Porter*, 370 F.3d at 560 (considering "whether prosecution of the suit will compel the plaintiffs to disclose information 'of the utmost intimacy'" (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir.1981))); *Doe v. I.N.S., U.S. Dep't of Just.*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) (permitting anonymity "to protect the petitioner's family…from possible reprisals"); *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) (recognizing the need for anonymity in "important privacy interest[s]" such as abortion, birth control, and child welfare cases).

[4] Fed. R. Civ. P. 26(c). Trial courts have broad discretion under Rule 26(c) to decide the appropriateness of a protective order. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[5] *See, e.g.*, *Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 872 (7th Cir.1997) ("[F]ictitious names are allowed when necessary to protect the privacy of…rape victims, and other particularly vulnerable parties or witnesses."); *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 64 (D.D.C. 2019) ("…courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault on the basis that they concern highly sensitive and personal subjects"); *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992) ("The plaintiff in this case does have a substantial privacy interest at stake. Unquestionably, one's sexual practices are among the most intimate parts of one's life. When those sexual practices fall outside the realm of 'conventional' practices which are generally accepted without controversy, ridicule or derision, that interest is enhanced exponentially."); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 945 (D. Or. 2020) (granting the plaintiff-victim of sex trafficking's request for protective order and to proceed pseudonymously due to the sensitive nature of the issues); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (finding "sexual misconduct" is a sufficient specific, sensitive, and personal privacy interest to warrant proceeding in anonymity).

4                 COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

e. Moreover, Defendant will not be prejudiced.  K.O. will agree to reveal her identity to Defendant for the limited purpose of investigating K.O.'s claims once the parties have entered into a protective order.  K.O. simply seeks redaction of K.O.'s personally identifying information from the public docket and assurances that Defendant will not use or publish K.O.'s identity in a manner that will compromise her personal life or future employment prospects.

f. K.O. should not be compelled to disclose her identity to maintain her privacy and safety.  K.O.'s privacy interest substantially outweighs the customary practice of judicial openness, and there is no prejudice to Defendant.[6]

15.    Defendant Red Lion Hotels Corporation ("RLHC") is a major lodging franchisor operating in North America with eight brands and locations across the United States and Canada.[7]  RLHC offers public lodging services directly and through its affiliates, subsidiaries, and franchises.

a. Defendant RLHC is a Washington corporation with its principal place of business located at 1550 Market Street #350, Denver, Colorado 80202.  RLHC can be served by its registered agent, CSC-Lawyers Incorporating Service at 2900 West Road Suite 500, East Lansing, Michigan, 48823.

b. K.O. was trafficked for commercial sex at the Knight's Inn® Sterling Heights located at 7887 17 Mile Road, Sterling Heights, Michigan 48313 ("Sterling Heights Knight's Inn®").

c. RLHC owns and operates the Knight's Inn® brand.[8]

d. The Sterling Heights Knight's Inn® is a RLHC branded hotel property.

e. RLHC owns, supervises, manages, controls, and/or operates the Sterling Heights

---

[6] *See, e.g.*, *J.C. v. Choice Hotels Int'l, Inc.,et al.*, No. 20-CV-00155-WHO, 2021 WL 1146406, at *3 (N.D. Cal. Mar. 4, 2021) (granting sex trafficking survivor's motion to proceed anonymously in all public filings and in all public court proceedings pre-trial)

[7] *Hotels for Every Traveler*, SONESTA RL FRANCHISING, INC., https://www.redlion.com/ (last visited Jun. 28, 2022).

[8] *Our Brands*, SONESTA RL FRANCHISING, INC., https://www.redlion.com/ (last visited Jun. 28, 2022); *Knight's Inn*, SONESTA RLH BRANDS, https://www.redlion.com/knights-inn (last visited Jun. 28, 2022).

COMPLAINT

Knight's Inn® where K.O. was trafficked.

f. RLHC is the principal in an agency relationship with the Sterling Heights Knight's Inn®. In addition to RLHC's liability under TVPRA section 1595, RLHC is vicariously liable for the acts and/or omissions of the staff at its Sterling Heights Knight's Inn® and at all of its franchisee hotels.

g. The Sterling Heights Knight's Inn® where K.O. was trafficked has apparent agency for RLHC so as to establish vicarious liability under Michigan law, in addition to an actual agency relationship.

h. RLHC has ratified the actions and inactions of the Sterling Heights Knight's Inn®.

i. RLHC exercises day-to-day control over the Sterling Heights Knight's Inn® through its brand standards and retains control over the Sterling Heights Knight's Inn® under the terms of its franchise agreement.

j. As the principal and as a hotel operator, RLHC controls the training and policies for its branded hotels, including the Sterling Heights Knight's Inn® where K.O. was trafficked. RLHC represents that it considers guest safety and security important and requires the brand hotels in its portfolio to comply with RLHC brand standards and all local, state, and federal laws.

k. RLHC also controls a uniform and required reservation and marketing system, credit processing system, and training and policy on brand standards, including policies on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems with back-end management by RLHC, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at the Sterling Heights Knight's Inn® where K.O. was trafficked.

l. Through RLHC's relationship with the staff at the Sterling Heights Knight's Inn®,

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

RLHC knowingly benefited, or received something of value, from its participation in a venture which it knew or should have known to be engaged in sex trafficking through royalty payments, licensing fees, and percentages of the gross room revenue which RLHC is entitled to under the franchise agreements.

m. RLHC benefits financially by receiving a percentage of the gross room revenue from the money generated by the operations of its branded hotels, including through a percentage of the revenue generated at the Sterling Heights Knight's Inn® from the rates charged on the rooms in which K.O. was trafficked for sex.

n. RLHC regularly conducts business in the State of Michigan, derives substantial revenue from services rendered in Michigan, including through the operation of numerous hotels in Michigan such as the Sterling Heights Knight's Inn®, has caused indivisible injuries to K.O. in Michigan, and profited from an illegal business venture at the Sterling Heights Knight's Inn®.

16. Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation is that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

### **JURSIDICTION AND VENUE**

17. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought.

///

COMPLAINT

## FACTUAL ALLEGATIONS

### A. HUMAN TRAFFICKING IS A $150 BILLION DOLLAR BUSINESS INEXTRICABLY LINKED TO DEFENDANT & THE HOSPITALITY INDUSTRY

19. Human trafficking is a global crime with enormous profits.[9]

20. The worldwide estimated total of illegal profits obtained from the use of forced labor is $150.2 billion per year.[10]

21. Two-thirds of these profits—an estimated $99 billion per year—are generated by forced sexual exploitation. The sex trafficking industry alone is therefore the second largest illicit crime industry behind only the sale of *all* illegal drugs.[11]

22. Indeed, sex trafficking makes up only 22% of the world's total forced labor but is "six times more profitable than all other forms of forced labor, and five times more profitable than forced labor exploitation outside domestic work."[12]

23. Statistics released in 2014 by the International Labor Organization ("ILO") showed approximately 4.5 million people were victims of forced sexual exploitation globally and each trafficker earned approximately $22,000 per victim.[13] In developed nations like the United States, the average annual profit per sex trafficking victim is $80,000.[14]

24. Yet, criminal traffickers could not succeed in this hugely profitable industry alone. Experts agree that human trafficking is increasingly less underground, and traffickers routinely interact and utilize commercial businesses for their criminal endeavors. "[T]raffickers use banks to deposit and launder their earnings; they use planes, buses and taxi services to transport their victims; they book hotel rooms integral also to sex trafficking; and, they are active users of social media platforms to recruit and advertise the services of their victims."[15] The private sector's involvement in the sex

[9] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.
[10] INT'L LAB. ORG., PROFITS AND POVERTY: THE ECONOMICS OF FORCED LABOR 13 (2014).
[11] *Id.*
[12] *Id.* at 7, 15.
[13] *Id.* at 13, 15.
[14] *Id.* at 27.
[15] Carmen Niethammer, *Cracking The $150 Billion Business Of Human Trafficking*, FORBES (Feb. 2, 2020), https://www.forbes.com/sites/carmenniethammer/2020/02/02/cracking-the-150-billion-business-of-human-trafficking/

COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

trafficking trade is undeniable, and companies have a responsibility to address their role in it with active and effective measures.[16]

25.     In particular, the hospitality industry and Defendant's hotels are at the center of the sex trafficking trade. News outlets, nonprofits, and other interested stakeholders have confirmed the "obvious nexus" between human trafficking and hotels' crucial role as the venue for selling commercial sex.[17]

26.     The trope of the "no-tell motel" is certainly not a new one. However, the problem is industry wide. In the United States, as much as 63% of all trafficking incidents occur at hotels ranging from luxury to economy.[18]

27.     According to National Human Trafficking Hotline statistics, hotels are the top-reported venue where sex trafficking occurs, surpassing even commercial brothels.[19] Traffickers and buyers alike frequently use hotel rooms to exploit victims because hotels offer anonymity and non-traceability which make them ideal venues for crime, and sex trafficking specifically.[20]

28.     Traffickers use hotels as the hub of their operations. Inside, the victims are raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex. This is referred to as an "in call."

29.     Hotels are also the venue of choice for buyers seeking an "out call," wherein the buyer rents a hotel room, and the trafficker then delivers the victim to the buyer's room to complete the sordid

[16] *Id*. (quoting Bradley Myles, chief executive officer of Polaris: "Human trafficking is a $150 billion a year global industry and can't be fully addressed without businesses taking active and effective measures to reduce the potential for exploitation within their own systems.").

[17] Brittany Anthony, *On-Ramps, Intersections, and Exit Routes: A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking,* Hotels and Motels, POLARIS 16-23 (Jul. 2018) https://polarisproject.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf; *see also Hotels & Motels Recommendations*, POLARIS https://polarisproject.org/hotels-motels-recommendations; Giovanna L. C. Cavagnaro*, Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[18] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).

[19] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.

[20] Cavagnaro*, supra* note 16, at 1.

transaction. Unsurprisingly, those on the demand side of this transaction (i.e., those purchasing sex) typically choose to engage in trafficking away from their home, which naturally leads to the increased involvement of hotels. In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[21]

30.     "Contrary to popular misconception, trafficking does not only take place in cheap hotels or motels with sub-par accommodations."[22]  Rather, traffickers select hotel businesses based on a variety of factors, including "convenient locations, buyer comfort, price, a hotel's policies, procedures,…infrastructure," and "whether the hotel is prone to law enforcement monitoring…[or is] "perceived by traffickers to have distracted and busy staff."[23]

31.     Defendant's complacency in the face of this sex trafficking epidemic makes its branded hotels, and others like them, *the* venue of choice for sex trafficking.  Traffickers and buyers alike rely on Defendant's refusal to adopt and enforce company-wide anti-trafficking policies, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.  Defendant and its branded hotels thus provide an ease of access for buyers, an ability to pay in cash (non-traceability), and the ability to maintain anonymity, privacy, discretion, and permission which increases the prevalence of sex trafficking at its branded hotels.[24]

32.     Defendant has both the power and responsibility to make sex trafficking difficult for criminals. Yet, Defendant repeatedly fails to heed the call, enact anti-trafficking measures, or enforce its own policies.  Instead, Defendant continues to facilitate these crimes at its branded hotels, content to direct its efforts solely to profit and its own bottom line.

33.     Put simply, hotels are a "crucial piece of the infrastructure necessary to facilitate human trafficking" because "hotel chain franchises…offer a good balance of quality and price while giving buyers a sense of anonymity and safety."[25]

34.     Due to Defendant's commitment to profiting off of the sex trafficking trade, it refuses to

[21] *Id*.
[22] Anthony, *supra* note 16 at 18.
[23] *Id*.
[24] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited Jun. 19, 2019).
[25] Anthony, *supra* note 16 at 18.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT

embrace anti-trafficking policies, practices, and training that would prevent K.O. and other vulnerable persons like her from being sold for sex in its branded hotels throughout the nation and worldwide.

**B. DEFENDANT KNOWINGLY COMMITS TO HARBORING TRAFFICKING TO PRESERVE ITS PROFITS AND PUBLIC IMAGE**

35.     Defendant has long known of its role and responsibilities in the sex trafficking trade.

36.     Global campaigns took initiative against the issue of human trafficking in the hotel industry and the lack of internal policies as early as 1997 with the United Nations Blue Heart Campaign.[26]

37.     To assist Defendant and other corporate brands in combatting sex trafficking within their hospitality companies, ECPAT developed and launched The Code of Conduct for the Protection of Children from Sexual Exploitation in Travel and Tourism ("The Code") in 1996 and ECPAT-USA in the United States in 2004.[27]

38.     The Code identifies the following six steps companies should take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.[28]

39.     ECPAT-USA also identifies hotel-specific best practices for preventing sex trafficking,

---

[26] *Have a Heart*, UNITED NATIONS OFFICE ON DRUGS AND CRIME, https://www.unodc.org/blueheart/en/-about-the-blue-heart.html (last visited Jun. 28, 2022); *Blue Heart Campaign*, WIKIPEDIA, https://en.wikipedia.org/wiki/Blue_Heart_Campaign (last visited Jun. 28, 2022).

[27] THE CODE.ORG, What is the Code?, https://thecode.org/about/ (last visited Apr. 1, 2022); *see also* ECPAT-USA, *No Vacancy For Child Sex Traffickers Impact Report* (2017), https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/NoVacany_Report.pdf.

[28] THE CODE.ORG, What is the Code?, https://thecode.org/about/ (last visited Apr. 1, 2022.)

COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

including but not limited to:[29]

    a.  Develop a formal policy against trafficking;

    b.  Develop a protocol for response;

    c.  Conduct periodic training on indicators;

    d.  Not renting by the hour;

    e.  Not permitting cash payments;

    f.  Blocking "internet access to popular websites for online sex ads";

    g.  Monitoring "online sex ads such as Craigslist and Backpage for your hotel name and pictures of your rooms and guests";

    h.  Change wi-fi passwords in rooms and cafes regularly;

    i.  Require all visitors are logged, including guest name, visitor name, arrival time, departure time, and room number;

    j.  Actively greet and speak with all visitors arriving at night;

    k.  Watch for a trend of visitors to the same room; and

    l.  Be aware of rooms with excess condoms, lubricants, and towels and report these indicators to management.

40.    Despite its availability and existence of resources, Defendant refuses to sign onto The Code or implement the anti-trafficking measures.[30]

41.    Rather, Defendant maintains its commitment to profiting from the exploitation of K.O. and others like her.

42.    For years, Defendant has made flagrant business decisions to contravene and reject universal guidance on effective anti-trafficking measures at its branded hotels.

43.    To preserve its profits and cut costs by not implementing responsible and effective anti-trafficking measures and training, Defendant chose only to hire media professionals to make public

---

[29] ECPAT-USA, ECPAT-USA Anti-Trafficking Hotel Checklist, https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/5cd329e8a4222f20baf5378b/1557342696892/ECPAT-USA_AntiTraffickingHotelChecklist.pdf (last visited Aug. 19, 2021).

[30] *See Our Code Members*, ECPAT-USA, https://www.ecpatusa.org/code-members (last visited Jun. 28, 2022).

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT

claims to its investors and customers to "address" the longstanding problem of human trafficking at its hotels.

44. Defendant agrees human trafficking is a problem globally, but never admits to commercial sex as a problem in its business within its branded hotels.

45. Defendant's "solution" to the problem is always the same—to give lip service about more employee training, and to identify some red flags related to trafficking. But this employee training has never occurred in earnest or *en masse*. For instance, according to ECPAT's reports, the actual number of employees trained by hotel industry leaders like Defendant is abysmal.[31]

46. Defendant and other hotel industry leaders have long engaged in a coordinated campaign to divert negative attention and preserve the profits the hospitality industry derives from its regular provision of accommodation to human traffickers and buyers, thereby ensuring that each industry participant remains complacent in its facilitation of trafficking at roughly the same frequency as its peers.

## C. THE SEX TRAFFICKING OF PLAINTIFF AT THE KNIGHT'S INN®

47. For approximately ten years beginning in 2003, K.O.'s trafficker sold her for commercial sex at Defendant's hotels, including the Sterling Heights Knight's Inn®, with its knowledge. K.O. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Sterling Heights Knight's Inn®.

48. K.O. met the man who became her trafficker in the summer of 2003. While K.O. initially thought her trafficker was her boyfriend, he almost immediately became physically abusive and used force and threats to compel her into forced sexual labor at the Sterling Heights Knight's Inn®.

49. K.O.'s trafficker remained in control of her every action. He kept her moving ceaselessly between Defendant's hotels, but always returning to the Sterling Heights Knight's Inn®.

50. K.O. was required to have sex for payment with various buyers at the Sterling Heights Knight's Inn®.

---

[31] KRISTINE ADAMS & MICHELLE GUELBART, ECPAT-USA, STAMPING OUT EXPLOITATION IN TRAVEL: BENCHMARKING THE TRAVEL INDUSTRY'S PROGRESS ON FIGHTING HUMAN TRAFFICKING AND THE COMMERCIAL SEXUAL EXPLOITATION OF CHILDREN 22 (2019).

COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

51. K.O. was sold by her trafficker for sex to anywhere between five to ten buyers per night.

52. K.O.'s trafficker used Defendant's Wi-Fi to post advertisements, talk to K.O.'s buyers, and watch and record her sexual acts.

53. K.O.'s buyers entering the Sterling Heights Knight's Inn® were non-paying guests and left shortly after they arrived. K.O.'s trafficker would wait in the lobby or visibly pace around the parking lot while K.O. was sex trafficked at the Sterling Heights Knight's Inn®. The foot traffic to the rooms where K.O. was harbored was constant and obvious.

54. K.O. encountered the same hotel staff while she was trafficked for sex at the Sterling Heights Knight's Inn® yet hotel staff ignored the signs of her abuse. The Sterling Heights Knight's Inn® staff did nothing to report or avert the suffering she endured while harbored at Sterling Heights Knight's Inn®.

55. K.O.'s trafficker followed a repetitive process which, alongside several other red flags and direct employee interactions, alerted or should have alerted Defendant to K.O.'s trafficking at the Sterling Heights Knight's Inn®, including but not limited to:

 a. payments for rooms in cash;

 b. paying for extended stays on a day-to-day basis;

 c. special room requests, including rooms in more secluded areas or by exits or late check out;

 d. K.O.'s physical appearance, including being malnourished, bruised, beaten, drugged, with visible cigarette burns, and clothed with attire inappropriate for the weather;

 e. K.O. and K.O.'s trafficker's behavior, including the trafficker's complete control over K.O., her identification, and her money;

 f. solicitation of buyers in and around the hotels, including the lobby and parking lot;

 g. using the Defendant's internet servers to post advertisements for commercial sex;

 h. a continuous procession of unregistered buyers entering and exiting the room;

 i. indicia of commercial sex within the room, including an inordinate number of used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

j.   obvious signs of illegal drug use;

k.   excessive requests for sheets, cleaning supplies, and room service;

l.   extraordinary violence and loud disturbances in common and public hotel areas;

m.   audible pleas to branded hotel staff and guests for help;

n.   hotel guest complaints;

o.   direct employee encounters and witnessed accounts of K.O.'s suffering in and around the branded hotels' premises; and

p.   online reviews indicating the prevalence of sex trafficking and criminal activity at the branded hotels.

56.   Despite these consistent red flag signs of trafficking which were readily noticeable—and noticed—by Defendant's staff, K.O.'s trafficker was permitted to continue harboring K.O. for the purpose of commercial sex at the Sterling Heights Knight's Inn®.  K.O. received no assistance from any of Defendant's staff during her captivity, and Defendant continued to profit from the room rentals of her trafficking.

57.   The trafficking at Defendant's hotels, including the Sterling Heights Knight's Inn®, was obvious and observed by hotel staff and guests.  To reap the profits of K.O.'s continued exploitation, Defendant chose not to implement and enforce effective anti-trafficking measures to protect K.O., and others like her, from this apparent criminal activity occurring within its business.

58.   Had Defendant not hewed to a common policy of harboring known and suspected human traffickers in exchange for its benefit, K.O.'s trafficker could not have successfully arranged the commercial sex transactions reinforcing K.O.'s continued captivity.

59.   Had Defendant not created business models which permitted, facilitated, and encouraged ongoing human trafficking at its branded hotels, K.O. could not have been trafficked at the Sterling Heights Knight's Inn® for over a decade.  The open and obvious signs of K.O.'s sex trafficking would and should have resulted in reporting K.O.'s trafficking, prevention of further room rentals to her trafficker, and a far earlier end to K.O.'s exploitation at Defendant's branded hotels, including the Sterling Heights Knight's Inn®.

60.   Similarly, if Defendant's proclaimed anti-trafficking efforts in training, policies, and

COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street  Suite 250
San Francisco  California 94111
415.426.3000 phone  •  415.426.3001 fax

procedures at the branded hotels were in fact implemented, enforced, and effective, it would have been impossible for K.O. to be repeatedly exploited under Defendant's so-called watchful eye.

61.	Prior to, during, and following the incidents described herein, Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at its branded hotels, including trafficking, drug dealing, and general safety concerns through video surveillance of its hotels and oral or written complaints regarding said suspicious activity.  Prioritizing its profits, Defendant chose not to take any actions to curtail these crimes and concerns.

62.	The impact of K.O.'s trafficking  has emotionally and physically injured K.O. who suffers immensely as a result of the horrors inflicted upon her at Defendant's hotels, including the Sterling Heights Knight's Inn®.

**D.	DEFENDANT IS DIRECTLY LIABLE FOR ITS ROLE IN PERMITTING AND FACILITATING K.O.'S TRAFFICKING AT THE KNIGHT'S INN®**

63.	Defendant has been on notice of repeated incidences of sex trafficking occurring at its branded hotels since as early as 2006 yet fail, and persist in failing, to fulfill its responsibility to combat such criminality, or refuse its benefits.

64.	Defendant participated in commercial hotel operating business ventures at its branded hotels, including the branded hotels where Plaintiff was trafficked.  There was an ongoing business relationship between Defendant and the Sterling Heights Knight's Inn®, which was aligned with Defendant's common hotel operating enterprise.

65.	Defendant knowingly benefitted from its business venture through economic and non-economic means, including but not limited to, the profits reaped from renting rooms to K.O.'s trafficker and maintenance of its public image.

66.	Through its business venture, Defendant harbored K.O., K.O.'s traffickers, and K.O.'s buyers, and facilitated the sex trafficking of K.O. in its hotel rooms.

67.	Defendant's employees working at its branded hotel observed the obvious indicia of K.O.'s trafficking, and thus facilitated her trafficking at the branded hotel.

68.	Defendant also knew or should have known of K.O.'s trafficking at its branded hotels through its centralized control over, and monitoring of, its branded hotels, the decades of research

and resources provided to Defendant to combat this known problem, and its purported anti-trafficking measures which its branded hotels would have used to report K.O.'s trafficking to Defendant.

69.     Yet Defendant failed to train, implement, and enforce anti-trafficking policies, procedures, and training to protect K.O., and others like her, from being repeatedly sex trafficked at its branded hotels, including the Sterling Heights Knight's Inn®.[32]

70.     Defendant could and should have exercised additional control over its branded hotels, including the Sterling Heights Knight's Inn®, to address the known sex trafficking at its properties by:

      a.   distributing information to assist branded hotel staff in identifying human trafficking;

      b.   mandating a process for escalating suspected human trafficking within the organization;

      c.   providing checklists, escalation protocols, and information on human trafficking to branded hotel staff;

      d.   requiring branded hotel staff to attend trainings related to human trafficking;

      e.   mandating new hire orientation on human rights and corporate responsibility;

      f.   mandating training and education to branded hotel staff through webinars, seminars, conferences, and online portals;

      g.   developing and holding ongoing training sessions on human trafficking; and

      h.   tracking performance indicators and key metrics on human trafficking prevention at branded hotels.

162.     Despite having actual and/or constructive knowledge of the extensive commercial sex trafficking occurring at its branded hotels, Defendant repeatedly failed to stop or adequately address K.O.'s sex trafficking at its branded properties.

---

[32] The failure to implement policies sufficient to combat a known problem in a hotel operation, like sex trafficking, supports a claim of negligence or willful blindness. *See J. B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2021 WL 4079207, at *15 (N.D. Cal. Sept. 8, 2021) (citing cases); *see also Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009); *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *12 (E.D. Tenn. May 29, 2007).

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT

**E.      DEFENDANT IS VICARIOUSLY LIABLE FOR K.O.'S TRAFFICKING AT THE KNIGHT'S INN®**

186.    To the extent the Sterling Heights Knight's Inn® is a franchise of Defendant, Defendant is vicariously liable for the actions and inactions of its franchises.

187.    Defendant's branded hotels act as Defendant's agents.

188.    Not only did Defendant lend its names and marks to its branded hotels, including the Sterling Heights Knight's Inn®, but Defendant also retained centralized control over the daily operations of its branded hotels, including marketing, reservation, vendor, technology, sales and revenue management.

189.    The average consumer does not see this relationship.  To a customer, the franchisee hotel operator is the same as Defendant franchisor.  Defendant provides signage in and around the hotel property that assures customers that when they check into that branded hotel, they can expect accommodations that conform to Defendant's brand standards.  This notion is reinforced at every turn: Defendant's brand mark appears emblazoned on everything from the pens on the bedside tables to the staff uniforms at the front desk.

190.    In addition to brand recognition and expectations, Defendant provides a marketing organization and hotel listings in the Global Distribution System (GDS) and other online travel agency databases.  Defendant also provides its branded hotel with access to its brand-wide central reservation system, 1-800 phone number, revenue management tools, world-class loyalty programs, and a website.  Thus, booking and room reservations are controlled by Defendant.[33]  Defendant sees booking and reservation trends, including the Sterling Heights Knight's Inn®.

191.    Defendant also requires its branded hotels to use its property management system, which is linked to Defendant's corporate network and data center, for processing reservations and credit card transactions.

192.    Franchisee branded hotels typically pay around 10% of their total revenue back to Defendant

[33] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry,* LODGING MAGAZINE (Apr. 10, 2018), https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

18                                                           COMPLAINT

and are required to develop and maintain the hotel properties in accordance with Defendant's standards as they are laid out in franchisee agreements.

193. Per the contract or franchise agreements, Defendant may enforce its standards through periodic inspections and even franchise termination if the branded hotel is found to be inadequate. However, Defendant is loath to terminate its franchise agreement with noncompliant hotels because it would miss out on the revenue the franchisees or branded hotels generate, and so it happens very rarely.

194. Defendant enforces its own brand standards.

195. Defendant exercises control over its branded hotels' day-to-day operations and sets its branded hotel's policies and procedures on human trafficking.

196. Defendant exercises more control over its branded hotels than just the hotel's daily operations.

197. Defendant also gathers data from its branded hotels' customers, including names, payment information, reservation history, browsing data, other details associated with their stay for promotional and guest safety reasons.[34]

198. Defendant and its branded hotels exhibit a significant degree of interrelated, intermingled, and unified operation, which demonstrates the agency relationship between them.

199. Under federal labor regulations, Defendant is considered a joint employer of the employees at its branded hotels. Further, it is a standard practice in the hospitality industry for parent companies to exercise significant control over the employment decisions of its branded hotels. Upon information and belief, Defendant promulgates policies, procedures, and standards governing the hiring, training, retention, and advancement of its branded hotel employees and sets its rates of pay.

224. The Sterling Heights Knight's Inn® is an agent of RLHC.

225. This agency relationship was created through Defendant's exercise of an ongoing and systemic right of control over its branded hotels' operations, including the Sterling Heights Knight's Inn®, beyond that which is necessary to maintain brand standards, including the means and methods

---

[34] *See, e.g.*, *Choice Hotels International, Inc. Privacy & Security Policy*, CHOICE HOTELS, https://www.choicehotels.com/legal/privacy-policy.

19 COMPLAINT

of how the branded hotels conducted daily business through the following actions:

 a. hosting online bookings on Defendant's domain;

 b. regulating the rates for room rentals at branded hotels;

 c. fixing other prices at branded hotels, such as fees, incidentals, and food prices;

 d. sharing profits;

 e. requiring branded hotels to use Defendant's property management systems;

 f. requiring branded hotels to use Defendant's payment processing systems;

 g. requiring branded hotels to use only specific and approved vendors;

 h. requiring branded hotels to use Defendant's customer rewards program;

 i. requiring branded hotels to carry internet services or other requirements for Wi-Fi access, filtering, and cybersecurity measures which gives Defendant the ability to access, monitor and harvest that internet data;

 j. requiring branded hotels to install Defendant's data transport systems to share data with Defendant;

 k. mandating insurance coverage requirements for branded hotels;

 l. controlling customer review and response platforms;

 m. gathering reports of data generated by branded hotels, including reservation, payment, and occupancy information through Defendant's centralized systems;

 n. requiring branded hotels to keep audit reports and other records of hotel operations;

 o. setting employee wages at the branded hotels;

 p. making employment decisions at branded hotels, including hiring, firing, and promotions;

 q. providing standardized training methods, education, and orientation materials for branded hotel employees, including but not limited to, webinars, seminars, conferences, and online portals;

 r. advertising for branded hotels, including new property openings and employment;

 s. providing marketing requirements and standardized marketing services for branded hotels;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

t.  providing the software, hardware, and platforms used by branded hotels in daily operations or to report suspicious activity;

u.  providing IT support for Defendant's required systems;

v.  building and maintaining the structure of branded hotels in the manner specified by Defendant;

w.  requiring branded hotels to make modifications to branded hotels upon the Defendant's request and to refrain from making substantial changes to the branded hotel without the Defendant's permission;

x.  conducting and authorizing regular inspections of branded hotels and operations by the local owners for compliance with contract terms and Defendant's rules and regulations;

y.  mandating standardized or strict rules of operation;

z.  developing uniform operating policies, procedures, and standards of branded hotels, including policies relating to security and guest safety, human rights, ethics, corporate governance, compliance with the law, and the prevention of commercial sex trafficking at the branded hotels, including a risk management process to identify, prevent, and mitigate risks for commercial sex trafficking; and

aa.  other actions that deprived the branded hotels of independence.

226. An apparent agency relationship also existed between Defendant and its branded hotels, including the Sterling Heights Knight's Inn®, because Defendant holds its branded hotels out to the public as possessing authority to act on Defendant's behalf.

227. In particular, Defendant is vicariously liable for the conduct of its branded hotels because traffickers, including K.O.'s traffickers, relied on Defendant's ineffective and/or unenforced anti-trafficking measures when choosing where to traffic their victims.

228. The branded hotels' employees observed obvious signs of sex trafficking and/or were aware of K.O.'s plight, yet failed to identify, protect, or prevent her from further victimization at its branded hotels. Defendant's policies and procedures failed to prevent her trafficking or were not properly implemented due to lack of training, education, and/or enforcement by Defendant.

COMPLAINT

229. Had Defendant implemented adequate anti-sex trafficking countermeasures, the branded hotels' employees aware of K.O.'s trafficking would have reported such activity directly to Defendant.

230. Defendant was not only aware of K.O.'s trafficking, but also of its own failure of to train its employees and institute changes that would have protected her and prevented trafficking at its branded hotels.

231. Given Defendant's public statements on behalf of its branded hotels and the control they assumed in educating, implementing, and directing its branded hotels, Defendant assumed breached certain duties in the following ways, including but not limited to:

    a. failing to distribute information to assist employees in identifying human trafficking;

    b. failing to mandate a process for escalating human trafficking concerns within the organization;

    c. failing to provide checklists, escalation protocols and information to property management staff;

    d. failing to require employees to attend trainings related to human trafficking;

    e. failing to mandate new hire orientation on human rights and corporate responsibility;

    f. failing to mandate training and education to branded hotels through webinars, seminars, conferences, and online portals;

    g. failing to develop and hold ongoing training sessions on human trafficking;

    h. failing to evaluate its reservation, data, and other centralized systems for indicators of sex trafficking;

    i. failing to track performance indicators and key metrics on human trafficking prevention;

    j. failing to evaluate implemented anti-trafficking measures for effectiveness and make changes where necessary;

    k. failing to ban cash or prepaid credit cards as payment for room rentals; and

    l. failing to track performance indicators and key metrics on human trafficking prevention; and

COMPLAINT

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

m. failing to filter, monitor, and block classified advertising websites known for commercial sex from being accessed via its internet service.

232. Defendant chose the profits from K.O.'s trafficking at its branded hotels over implementing or enforcing anti-trafficking policies, procedures, and training.

233. Defendant knew or should have known that these profits were derived from the criminal sex trafficking of K.O. at its branded hotels, including the Sterling Heights Knight's Inn®.

234. Defendant is aware that human trafficking occurs at its branded hotels and knows that it facilitates rather than prevents sex trafficking.

235. Despite having actual and/or constructive knowledge of sex trafficking occurring at its branded hotels, including the trafficking of K.O. at the Sterling Heights Knight's Inn®, Defendant has repeatedly failed to prevent or adequately address the crimes.

236. Had Defendant acted in earnest and implemented anti-trafficking measures at its branded hotels, K.O.'s trafficking would have been prevented.

237. Defendant's rooms would not have been rented for her victimization; nor would they have profited from her pain.

**CAUSES OF ACTION**

**COUNT ONE – 18 U. S. C. § 1595 ("TVPRA")**

238. Plaintiff incorporates each foregoing allegation as though set forth fully herein.

239. K.O. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

240. Defendant's acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendant had a statutory obligation not to benefit from a venture that it knew, or should have known, to engage in violations of 18 U.S.C. § 1591(a). At all relevant times, Defendant breached this duty by its participation in and facilitation of the trafficking of K.O. for the purposes of commercial sex induced by force, fraud, or coercion, by its acts, omissions, and commissions.

241. Defendant benefited as a result of its acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of its customer base that seeks to

participate in the sex trade. The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of K.O.'s injuries and damages.

242. K.O. has suffered substantial physical and psychological injuries as the result of being trafficked at the Defendant's hotels, including the Sterling Heights Knight's Inn®, in violation of 18 U.S.C. § 1591(a).

**PRAYER OF RELIEF**

WHEREFORE Plaintiff requests that the jury selected to hear this case render a verdict in her favor on all counts alleged against Defendant, and that it award her damages in an amount which will adequately compensate her for the injuries and damages she sustained due to Defendant's conduct outlined as follows:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Past and future medical expenses, as well as the costs associated with past and future life care;

c. Past and future lost wages and loss of earning capacity;

d. Past and future emotional distress;

e. Consequential and/or special damages;

f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. Disgorgement of profits obtained through unjust enrichment;

h. Restitution;

i. Punitive damages with respect to each cause of action;

j. Reasonable and recoverable attorneys' fees;

k. Costs of this action; and

l. Pre-judgment and all other interest recoverable.

On the basis of the foregoing, Plaintiff also requests a jury be selected to hear this case and render a verdict for Plaintiff, and against Defendant, and that it award her damages in an amount which adequately reflects the enormity of Defendant's wrongs, and which will effectively prevent

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street Suite 250
San Francisco California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT

other similarly caused acts.  Further, Plaintiff requests the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deem appropriate under the circumstances.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 28, 2022

Respectfully submitted,

/s/ *Brian J. Perkins*
Brian J. Perkins (CA SBN 315870)
bperkins@levinsimes.com
William H. Cross (CA SBN 337801)
wcross@levinsimes.com

**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001

*Attorneys for Plaintiff K.O.*

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street  Suite 250
San Francisco  California 94111
415.426.3000 phone • 415.426.3001 fax