Brian J. Perkins, Esq.
William H. Cross, Esq.
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: bperkins@levinsimes.com
Email: wcross@levinsimes.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| K.O., an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>G6 Hospitality, LLC; Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren; Marriott International, Inc.; F.I. Farmington Hills, LLC d/b/a Fairfield Inn & Suites Detroit Farmington Hills; Farmington Hospitality, Inc. d/b/a Fairfield Inn & Suites Detroit Farmington Hills; Knights Franchise Systems, Inc.; Hawthorn Suites Franchising, Inc. d/b/a Hawthorn Suites by Wyndham; Holiday Hospitality Franchising LLC; Southfield Hotel Suites, Inc. d/b/a Holiday Inn Express & Suites; Akram Namou d/b/a Knight's Inn Sterling Heights, d/b/a Hawthorn Suites by Wyndham Detroit Southfield, and d/b/a Holiday Inn Express & Suites Southfield Detroit; Extended Stay America, Inc.; Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton, Extended Stay America Detroit Southfield Northwestern Highway, and Extended Stay America Detroit Southfield I-696; and Red Roof Inns, Inc.<br><br>                    Defendants. | Case No.:  3:22-cv-11450-LJM-DRG<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>    1.  **18 U.S.C. § 1595**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, K.O., by and through undersigned counsel, and respectfully submits her second amended complaint for damages and avers as follows:

## **INTRODUCTION**

1.     For years, commercial sex trafficking ventures have openly operated in and out of the properties owned, operated, supervised by Defendants while Defendants earn substantial profits at

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

the expense of human life, rights, and dignity.

2. Defendants knew and have known for more than a decade that sex trafficking repeatedly occurs on the properties they own, operate, and manage, and/or operate under their brand flags.

3. Rather than taking timely and effective measures to prevent sex trafficking, Defendants have chosen to ignore the open and obvious signs and presence of commercial sex trafficking on their properties and in the hotels, they operate, supervise, and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

4. This action for damages is brought by Plaintiff, a survivor of sex trafficking, under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

5. Plaintiff first became familiar with her trafficker in 2003. Plaintiff's trafficker, under the guise of seeking a romantic relationship, began dating her before turning violent and selling her to buyers for sex. Plaintiff was trafficked for over a decade, from 2003 to 2014. During this time, Plaintiff was forced to sexually service paying strangers while enduring brutal physical and emotional abuse at the hands of her trafficker while at the hotels owned, operated, supervised, franchised, and/or branded by Defendants.

6. Each Defendant, in violation of 18 U.S.C. § 1595, knowingly benefitted from participation in a venture that it knew, or at the very least should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

7. Plaintiff was trafficked for commercial sex and suffered severe physical and emotional abuse under duress at the hotels identified herein that were either owned and operated by brand hotels or via franchisees of the brand hotels.

8. As a direct and proximate result of Defendants' consistent refusals to identify and prevent commercial sex trafficking, Plaintiff was trafficked, sexually exploited, and repeatedly victimized at the hotels identified herein.

9. Plaintiff brings this action pursuant to TVPRA, 18 U.S.C. § 1595 against the Defendants who enabled, harbored, held, facilitated, turned a blind eye to, and financially benefitted from a sex trafficking venture in which Plaintiff was trafficked for the purpose of commercial sex, sexually

2

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

exploited, and brutally victimized in violation of 18 U.S.C. § 1591(a).

## PARTIES

10.     Plaintiff, an individual identified herein either by her initials, "K.O." or "Plaintiff," is a resident of and is domiciled in Michigan. She was sold for sex throughout Michigan for eleven (11) years. Plaintiff is a victim of trafficking pursuant to 22 U.S.C. § 7102(15) and 18 U.S.C. § 1950.

11.     Defendant G6 Hospitality, LLC ("G6") is a Delaware corporation with its principal place of business in Carrollton, Texas and is registered to do business in Michigan. G6 is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee Defendant Warren Economy Hotel, Inc., offered public lodging services at the Motel 6 Warren Michigan – Detroit East, and the Motel 6 Madison Heights, Michigan – Detroit Northeast.

      i.     G6 conducts its business under its legal name. G6 directly owns and operates hotels under the brands Studio 6 and Motel 6 and offers franchises in the United States to franchisees who can own and operate the hotels bearing G6's brand flag.

      ii.     The Motel 6 Warren, Michigan Detroit East ("Motel 6 of Warren") where Plaintiff was trafficked and located at 8300 Chicago Road, Warren Michigan, 48093 was company owned and operated by G6 until 2011. Starting in 2011, G6 franchised this property to Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren.

      iii.     The Motel 6 Madison Heights, Michigan – Detroit Northeast ("Madison Heights Motel 6") where Plaintiff was trafficked and located at 32700 Barrington Street, Madison Heights, Michigan 48701 was company owned and operated by G6 throughout the years within which Plaintiff was trafficked.

      iv.     As a company owning and operating G6 hotels under the its Motel 6 and Studio 6 brands, G6 is responsible for, *inter alia*, directly employing, paying, and supervising hotel staff; operating the day to day activities of the hotels it owns and operates; controlling the training, procedures, and policies for the hotels it owns and operates; receiving, addressing, and preventing criminal behavior taking place within and/or on the grounds of the hotels it owns and operates, including but not limited to sex trafficking; responsible for complying with all local, state, and federal laws; on-site

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

3

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and other training; received and receives the gross room revenue from the money generated by the operations of the Motel 6 of Warren (until 2011) and the Madison Heights Motel 6, including the rate charged for the rooms in which Plaintiff was trafficked; required its employees to attend G6's annual conference; received and collected payment invoice and processing fees; provided wireless internet access to Motel 6 of Warren (until 2011) and the Madison Heights Motel 6, and promoting guest safety and respect which G6 considers a component of its social impact.[1]

v. Through its direct ownership and operation of the Motel 6 of Warren (from 2003 to 2011) and Madison Heights Motel 6 (from 2003 through 2013), G6 knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which Plaintiff was trafficked.

vi. G6 requires franchisees, including Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren to strictly conform with its brand standards, to comply with all local, state, and federal laws, and considers guest safety and respect a component of its social impact.[2]

vii. Through its franchise agreement with Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren, G6 knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which Plaintiff was trafficked.

viii. As part of its franchise agreement with Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren, G6 provided – post 2011 - *inter alia*, on-site and other training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of the Motel 6 of Warren operated by Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren, including a

---

[1] https://g6hospitality.com/about-us/our-impact-2/.
[2] *Id*.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

4

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

percentage of the rate charged for the rooms in which Plaintiff was trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Motel 6 of Warren operated by Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked; required Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren and other franchisees to attend G6's annual conference; offered additional training to Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren, and required franchisees, including Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren to comply with the standards and policies in G6's operating manual.

ix.   G6 requires the hotels in its portfolio – including those that are company-owned and operated as well as franchised, and including the Motel 6 of Warren and the Madison Heights Motel 6 - to comply with G6 brand standards and all local, state, and federal laws.

x.    G6 claims its teams regularly assess its properties – whether company-owned and operated or franchised - to ensure safety and security measures are in place.[3]

xi.   G6 is subject to the jurisdiction of this Court because it regularly transacts business in Michigan, is registered to do business in Michigan, entered and remains in franchise agreements with Michigan entities and/or entities operating hotels in Michigan, including its franchise agreement with Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from illegal sex trafficking ventures at the Motel 6 of Warren and the Madison Heights Motel 6.

---

[3]https://g6hospitality.com/g6-hospitality-partners-with-ecpat-usa-to-combat-trafficking-and-exploitation/

5

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

12. Defendant Warren Economy Hotel, Inc. d/b/a Motel 6 of Warren ("Warren Economy") is a Michigan corporation with its principal place of business located 24725 Greenfield Road, Southfield, Michigan 48075. Warren Economy is a hospitality company and franchisee of Defendant G6 and does business as the Motel 6 of Warren located at 8300 Chicago Road, Warren Michigan, 48093. Directly and through its franchise agreement with Defendant G6, which began in 2011, Defendant Warren Economy directly offered public lodging services at the Motel 6 of Warren.

    i. Defendant Warren Economy is a franchisee of G6 and does business as Motel 6 of Warren.

    ii. Franchised Motel 6 motels are identified by G6's trademark, "Motel 6" and by certain other trade names, service marks, trademarks, logos, emblems and indicia of origin (known as "proprietary marks").

    iii. As a G6 franchisee, Warren Economy received confidential operating and brand standard manuals that contained both mandatory and recommended standards and procedures it was required to use when operating the Motel 6 of Warren.

    iv. The franchise agreement Defendant Warren Economy entered into with G6 granted Defendant Warren Economy the right to use Motel 6 trademarks for the operations of the Motel 6 of Warren where Plaintiff was trafficked.

    v. Defendant Warren Economy was responsible for the day-to-day operations, under G6's supervision, at the Motel 6 of Warren where Plaintiff was trafficked, and was required, by G6, to undergo on-site and other opening training; provide G6 with a percentage of the gross room revenue from the money generated by the operations of Motel 6 of Warren; provide G6 with a percentage of the rate charged for the rooms in which Plaintiff was trafficked; provide G6 with program fees from a percentage taken from gross room revenues generated by the operations of Motel 6 of Warren, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked; required to attend G6's annual conference; required to use the wireless internet access provided by G6; and was required to comply with the standards and policies in G6's operating manual.

6

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

vi. Defendant Warren Economy knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in at the Motel 6 of Warren

vii. Defendant Warren Economy is subject to the jurisdiction of this Court because it is a Michigan corporation, regularly does business in Michigan, entered into a franchise agreement with G6 in Michigan, caused indivisible injuries to Plaintiff in Michigan, contracts to supply services in Michigan, and knowingly profited from an illegal sex trafficking venture at the Motel 6 of Warren located at 8300 Chicago Road, Warren, Michigan 48093.

13. Defendant Marriott International, Inc. ("Marriott") is a Delaware corporation with its principal place of business located in Bethesda, Maryland and is registered to do business in Michigan. Marriott is a hospitality company that, at the time of the incidents alleged herein, directly and through its agents, affiliates, subsidiaries, and franchisees offered public lodging services at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills located at 27777 Stansbury St, Farmington Hills, MI 48334 under Marriott's brands:

i. The Fairfield Inn & Suites by Marriott Detroit Farmington Hills is a Marriott brand hotel.

ii. Defendant F.I. Farmington Hills, LLC ("F.I. Farmington") did business as the Fairfield Inn & Suites by Marriott Detroit Farmington Hills from 2003 to 2005.

iii. Defendant Farmington Hospitality, Inc. ("Farmington Hospitality") did business as the Fairfield Inn & Suites by Marriott Detroit Farmington Hills from 2005 through 2013.

iv. As a hotel operator brand, Marriott controls the training, procedures, and policies for the hotels that bear its brand name – including the Fairfield Inn & Suites by Marriott Detroit Farmington Hills.

v. Marriott maintains and considers guest safety and security important and requires the hotels in its portfolio – including the Fairfield Inn & Suites by Marriott Detroit

7

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Farmington Hills – to comply with Marriott brand standards and all local, state, and federal laws.[4]

vi. Through its relationship with its franchisees, F.I. Farmington Hills, LLC and Farmington Hospitality, Inc., who franchised the Fairfield Inn & Suites by Marriott Detroit Farmington Hills where Plaintiff was trafficked, Marriott knowingly benefited or received something of value from its harboring, facilitation of, or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

vii. Marriott receives a percentage of the gross room revenue for the money generated by the operations of all Marriott hotels, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills.

viii. Marriott, through its franchise relationship with Defendants F.I. Farmington Hills LLC (2003 to 2005) and Farmington Hospitality, Inc. (2005 to 2013) controls the training, procedures, and policies for the Fairfield Inn & Suites by Marriott Farmington Hills where Plaintiff was trafficked, which bears its brand name. Marriott controls the training, procedures, and policies for all franchisees.

ix. Through its franchise agreements with Defendants F.I. Farmington Hills LLC (2003 to 2005) and Farmington Hospitality, Inc. (2005 to 2014), Marriott knowingly benefited or received something of value from its facilitation of or participation in a joint venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

x. Marriott is subject to the jurisdiction of this Court because it regularly transacts business in Michigan, is registered to do business in Michigan, franchises hotels in Michigan including the Fairfield Inn & Suites by Marriott Detroit Farmington Hills that operates under its brand flag via its franchisees F.I. Farmington Hills LLC (2003

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

---

[4] Marriott International, Inc., Human Rights Policy Statement (July 2017) available at https://www.marriott.com/marriottassets/Multimedia/PDF/Corporate/HumanRightsStatement.pdf (last visited November 17, 2022).

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

to 2005) and Farmington Hospitality, Inc. (2005 to 2014), contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Fairfield Inn & Suites by Marriott Farmington Hills.

14. Defendant F.I. Farmington Hills, LLC d/b/a Fairfield Inn & Suites Detroit Farmington Hills ("F.I. Farmington") is a Michigan company with its principal place of business in Michigan. F.I. Farmington is a franchisee of Defendant Marriott and did business as the Fairfield Inn & Suites by Marriott Farmington Hills from 2003 to 2005.

15. Directly and through its franchise relationship with Defendant Marriott, F.I. Farmington offered public lodging services at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills from 2003 to 2005.

    i. Defendant F.I. Farmington was a franchisee of Defendant Marriott from 2003 to 2005.

    ii. The Fairfield Inn & Suites by Marriott Detroit Farmington Hills is a Marriott brand hotel.

    iii. F.I. Farmington Hills, LLC d/b/a Fairfield Inn & Suites Detroit Farmington Hills operates under Defendant Marriott's brand flag and was responsible for the day-to-day operations at the Fairfield Inn & Suites Detroit Farmington Hills from 2003 to 2005.

    iv. Through its franchisee relationship with Defendant Marriott, F.I. Farmington was required to implement the training, procedures, and policies as instructed by Defendant Marriott. It is also required to provide Marriott with a percentage of gross room revenue and money generated from the operation of the Fairfield Inn & Suites by Marriott Detroit Farmington Hills, including the rates charged for the rooms within which Plaintiff was trafficked, required to use the wireless internet access provided by Marriott; and was required to comply with the standards and policies in Marriott's operating manual.

    v. As the operator of the Fairfield Inn & Suites by Marriott Detroit Farmington Hills,

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

9

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

operating under the supervision of Marriott, where Plaintiff was trafficked, Defendant F.I. Farmington knowingly benefited or received something of value from its harboring, facilitation of, or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

vi.  Defendant F.I. Farmington, is subject to the jurisdiction of this Court because it is a Michigan limited liability company, regularly transacts business in Michigan, is registered to do business in Michigan, and operates and/or has operated hotels in Michigan including Fairfield Inn & Suites by Marriott Detroit Farmington Hills which operates under Marriott's brand flag, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills.

16.  Defendant Farmington Hospitality, Inc. d/b/a Fairfield Inn & Suites Detroit Farmington Hills ("Farmington Hospitality") is a Michigan corporation with its principal place of business in Michigan. Farmington Hospitality is a franchisee of Defendant Marriott and does business as the Fairfield Inn & Suites by Marriott Detroit Farmington Hills located at 27777 Stansbury Boulevard, Farmington Hills, Michigan 48334. Directly and through its franchise relationship with Defendant Marriott, Farmington Hospitality offered public lodging services at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills.

i.  Defendant Farmington Hospitality is a franchisee of Defendant Marriott.

ii.  The Fairfield Inn & Suites by Marriott Detroit Farmington Hills is a Marriott brand hotel.

iii.  Farmington Hospitality, as a hotel operator Fairfield Inn & Suites by Marriott Detroit Farmington Hills operating under Defendant Marriott's brand flag, is responsible for the day-to-day operations at Fairfield Inn & Suites by Marriott Detroit Farmington Hills.

iv.  Through its franchisee relationship with Defendant Marriott, Farmington Hospitality

10

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

is required to implement the training, procedures, and policies as instructed by Defendant Marriott. It is also required to provide Marriott with a percentage of gross room revenue and money generated from the operation of the Fairfield Inn & Suites by Marriott Detroit Farmington Hills, including the rates charged for the rooms within which Plaintiff was trafficked, required to use the wireless internet access provided by Marriott; and was required to comply with the standards and policies in Marriott's operating manual.

v.   As the operator of the Fairfield Inn & Suites by Marriott Detroit Farmington Hills, operating under the supervision of Marriott, where Plaintiff was trafficked, Defendant Farmington Hospitality, knowingly benefited or received something of value from its harboring, facilitation of, or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

vi.   Defendant Farmington Hospitality is subject to the jurisdiction of this Court because it is a Michigan company, regularly transacts business in Michigan, is registered to do business in Michigan, operates dozens of hotels in Michigan including the Fairfield Inn & Suites by Marriott Detroit Farmington Hills which operates under Marriott's brand flag, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills.

17.   Defendant Knights Franchise Systems, Inc. ("Knights Franchise") is a Delaware corporation with its principal place of business in New Jersey. Knights Franchise is registered to do and does business in Michigan. Knights Franchise is a company that, at the time of the incidents alleged herein, directly and through its franchise agreement with Defendant Akram Namou d/b/a Knight's Inn Sterling Heights, offered public lodging services at the Knight's Inn Sterling Heights located at 7887 17 Mile Road, Sterling Heights, Michigan 48313.

i.   The Knight's Inn Sterling Heights, during all times relevant herein, was owned and operated by Defendant Akram Namou and operated under the "Knights" license.

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

Defendant Knights Franchise and Defendant Akram Namou d/b/a Knight's Inn Sterling Heights were parties to a franchise agreement.

ii.   Through its franchise agreement with Defendant Akram Namou d/b/a Knight's Inn Sterling Heights where Plaintiff was trafficked, Knights Franchise knowingly benefitted or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals where Plaintiff was trafficked.

iii.   Knights Franchise requires its franchisees, including Defendant Akram Namou d/b/a Knight's Inn Sterling Heights, to operate under the distinctive "Knights" system and license.  Knights Franchise receives a percentage of the gross room revenue from the money generated by the operations of all Knight's Inn hotels, including a percentage of the rate charged for the rooms within which Plaintiff was trafficked at the Knight's Inn Sterling Heights and requires its licensed hotels, including the Knight's Inn Sterling Heights, to use the wireless internet access provided by Knights Franchise, and was required to comply with the standards and policies of Knights Franchise's operating manual and franchise agreement.

iv.   Knights Franchise is subject to the jurisdiction of this Court because it regularly transacts business in Michigan by franchising hotels in Michigan, including through its franchise agreement with Defendant Akram Namou d/b/a Knight's Inn Sterling Heights, is registered to do business in Michigan, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Knight's Inn Sterling Heights.

18.   Defendant Hawthorn Suites Franchising, Inc. d/b/a Hawthorn Suites by Wyndham ("Hawthorn Franchising") is a Georgia corporation that is registered to do business in Michigan. Hawthorn Franchising is a hotel management and franchising company, and a subsidiary of Wyndham Hotels & Resorts, Inc.

i.   Plaintiff was trafficked at the hotel located at 25100 Northwestern Highway, Southfield, Michigan 48075.  For the years 2003 to 2006, the hotel located at 25100

12

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

Northwestern Highway, Southfield, Michigan 48075 operated as a Hawthorne Suites by Wyndham, specifically the Hawthorn Suites by Wyndham Detroit Southfield.

ii. Hawthorn Suites hotels operate under the Wyndham brand flag pursuant to franchise agreements between Hawthorn Franchising (as the franchisor) and franchisees, including franchisee Defendant Akram Namou d/b/a Hawthorn Suites by Wyndham Detroit Southfield.

iii. Through its franchise agreement with Defendant Akram Namou d/b/a Hawthorn Suites by Wyndham Detroit Southfield where Plaintiff was trafficked during the years 2003 to 2006, Hawthorn Franchising knowingly benefitted or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals where Plaintiff was trafficked.

iv. Hawthorn Franchising requires its franchisees, including Defendant Akram Namou d/b/a Hawthorn Suites by Wyndham Detroit Southfield, to operate under the Wyndham brand.  Hawthorn Franchising receives a percentage of the gross room revenue from the money generated by the operations of all Hawthorn Suites by Wyndham hotels it franchises, including a percentage of the rate charged for the rooms within which Plaintiff was trafficked at the Hawthorn Suites by Wyndham Detroit Southfield from 2003 to 2006,  and requires its said franchised hotels, including the Hawthorn Suites by Wyndham Detroit Southfield, to use the wireless internet access provided by Hawthorn Franchising, and was required to comply with the standards and policies of Hawthorn Franchising's operating manual and franchise agreement.

v. Hawthorn Franchising is subject to the jurisdiction of this Court because it regularly transacts business in Michigan by franchising hotels in Michigan, including through its franchise agreement with Defendant Akram Namou d/b/a Hawthorn Suites by Wyndham Detroit Southfield, is registered to do business in Michigan, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and

13

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

knowingly profited from an illegal sex trafficking venture at the Hawthorn Suites by Wyndham Detroit Southfield.

19. Defendant Holiday Hospitality Franchising, LLC ("Holiday Franchising") is a Delaware limited liability company with its principal place of business in Atlanta Georgia. Holiday Franchising is registered to do business and does business in Michigan. Holiday Franchising is a company that, during the relevant time period, directly and through its franchise agreements with Defendant Akram Namou d/b/a Holiday Inn Express & Suites Southfield Detroit (from August 2006 to January 2007) and Southfield Hotel Suites, Inc. d/b/a Holiday Inn Express & Suites Southfield Detroit (January 2007 through 2014) offered public lodging services at the Holiday Inn Express & Suites Southfield Detroit located at 25100 Northwestern Highway, Southfield, Michigan 48075.

    i. Plaintiff was trafficked at the hotel located at 25100 Northwestern Highway, Southfield, Michigan 48075 from 2003 through 2014. For the years 2006 through 2014, the hotel located at 25100 Northwestern Highway, Southfield, Michigan 48075 operated as a Holiday Inn, specifically the Holiday Inn Express & Suites Detroit Southfield.

    ii. The Holiday Inn Express & Suites Southfield Detroit, for the years 2006 through 2014 operated under Holiday Franchising's license.

    iii. Through its franchise agreements with Defendant Akram Namou d/b/a Holiday Inn Express & Suites Southfield Detroit (from August 2006 to January 2007) and Southfield Hotel Suites, Inc. d/b/a Holiday Inn Express & Suites Southfield Detroit (January 2007 through 2014), Holiday Franchising knowingly benefitted or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals where Plaintiff was trafficked.

    iv. Holiday Franchising requires its franchisees, including Akram Namou d/b/a Holiday Inn Express & Suites Southfield Detroit and Southfield Hotel Suites, Inc. d/b/a Holiday Inn Express & Suites Southfield Detroit, to operate under the Holiday brand and Holiday Franchising's license. Holiday Franchising receives a percentage of the

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

14

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

gross room revenue from the money generated by the operations of all Holiday Inn Express & Suites hotels, including a percentage of the rate charged for the rooms within which Plaintiff was trafficked at the Holiday Inn Express & Suites Southfield Detroit and requires its licensed and branded hotels to use the wireless internet access provided by Holiday Franchising, and require its franchisees to comply with the standards and policies of Holiday Franchising's operating manual and franchise agreement.

v. Holiday Franchising is subject to the jurisdiction of this Court because it regularly transacts business in Michigan by franchising hotels in Michigan, including through its franchise agreements with Akram Namou d/b/a Holiday Inn Express & Suites Southfield Detroit and Southfield Hotel Suites, Inc. d/b/a Holiday Inn Express & Suites Southfield Detroit, is registered to do business in Michigan, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Holiday Inn Express & Suites Southfield Detroit.

20. Defendant Southfield Hotel Suites, Inc. d/b/a Holiday Inn Express & Suites Southfield Detroit ("Southfield Hotel") is a Michigan corporation with its principal place of business in Michigan. Directly and through its franchise relationship with Defendant Holiday Franchising, Southfield Hotel offered public lodging services at the Holiday Inn Express & Suites Southfield Detroit

i. Defendant Southfield Hotel is a franchisee of Holiday Franchising and operates under Holiday Franchising's license and brand.

ii. Southfield Hotel, as a hotel operator d/b/a Holiday Inn Express & Suites Southfield Detroit under Holiday Franchising's brand and license, is responsible for the day-to-day operations of the Holiday Inn Express & Suites Southfield Detroit.

iii. Through its franchise agreement and relationship with Defendant Holiday Franchising, Southfield Hotel is required to implement the training, procedures, and policies as instructed by Defendant Holiday Franchising. It is also required to

15

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

provide Holiday Franchising with a percentage of gross room revenue and money generated from the operation of the Holiday Inn Express & Suites Southfield Detroit, including the rates charged for the rooms within which Plaintiff was trafficked, required to use the wireless internet access provided by Holiday Franchising, and was required to comply with the standards and policies outlined in Holiday Franchising's operating manual and/or franchise agreement.

iv.   As the operator of the Holiday Inn Express & Suites Southfield Detroit, operating under the supervision of Holiday Franchising, where Plaintiff was trafficked, Defendant Southfield Hotel knowingly benefitted or received something of value from its harboring, facilitation of, or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

v.   Defendant Southfield Hotel is subject to the jurisdiction of this Court because it is a Michigan corporation with its principal place of business in Michigan, is registered to do business in Michigan, operates hotels in Michigan including the Holiday Inn Express & Suites Southfield Detroit which operates under Holiday Franchising's brand and license and where Plaintiff was trafficked, contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Holiday Inn Express & Suites Southfield Detroit.

21.   Defendant Akram Namou ("Namou") d/b/a Knight's Inn Sterling Heights, d/b/a Hawthorn Suites by Wyndham Detroit Southfield, and d/b/a Holiday Inn Express & Suites Southfield Detroit is an individual who is a resident of and is domiciled in Michigan.

i.   Namou, directly and through his franchise agreement with Defendant Knights Franchise, offered public lodging services at the Knight's Inn Sterling Heights where Plaintiff was trafficked.

a.   Namou, as a hotel operator d/b/a Knight's Inn Sterling Heights during the relevant time period was and is responsible for the day-to-day operations of the

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

Knight's Inn Sterling Heights.

b. Through Namou's franchise agreement and relationship with Defendant Knight's Franchise,  Namou is required to implement the training, procedures, and policies as instructed by Knight's Franchise and operate under Knight's Franchise brand and license.  He is also required to provide Knight's Franchise with a percentage of gross room revenue and money generated from the operation of the Knight's Inn Sterling Heights, including the rates charged for the rooms within which Plaintiff was trafficked, required to use the wireless internet access provided by Knight's Franchise, and was required to comply with the standards and policies outlined in Knight's Franchise operating manual and/or franchise agreement.

c. As the operator of the Knight's Inn Sterling Heights, operating under the supervision of Knights Franchise, where Plaintiff was trafficked, Defendant Namou knowingly benefitted or received something of value from his harboring, facilitation of, or participation in a venture which Defendant knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

ii. Namou, directly and through his franchise agreement with Hawthorn Franchising, offered public lodging services at the Hawthorn Suites by Wyndham Detroit Southfield from 2003 to 2006, where Plaintiff was trafficked.

a. The Hawthorn Suites by Wyndham Detroit Southfield operated under the Wyndham brand flag.

b. Namou, as a hotel operator d/b/a Hawthorn Suites by Wyndham Detroit Southfield operating under the Wyndham brand flag and Hawthorn Franchising's license, was responsible for the day-to-day operations of the Hawthorn Suites by Wyndham Detroit Southfield.

c. Through his franchise agreement and relationship with Defendant Hawthorn Franchising, Namou was required to implement the training, procedures, and

17

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

policies as instructed by Defendant Hawthorn Franchising. Defendant Namou was also required to provide Hawthorn Franchising with a percentage of gross room revenue and money generated from the operation of the Hawthorn Suites by Wyndham Detroit Southfield, including rates charged for the rooms within which Plaintiff was trafficked, required to use the wireless internet access provided by Defendant Hawthorn Franchising, and was required to comply with the standards and policies outlined in Hawthorn Franchising's operating manual and/or franchise agreement.

d. As the operator of the Hawthorn Suites by Wyndham Detroit Southfield, operating under Wyndham's brand flag and under the supervision of Defendant Hawthorn Franchising, Namou knowingly benefitted or received something of value from his harboring, facilitation of, or participation in a venture which he knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

iii. Namou, directly and through his franchise agreement with Holiday Franchising offered public lodging services at the Holiday Inn Express & Suites Southfield Detroit from August 2006 to January 2007.

a. Defendant Namou is a franchisee of Holiday Franchising and operates under Holiday Franchising's license and brand.

b. Namou, as a hotel operator d/b Holiday Inn Express & Suites Southfield Detroit under Holiday Franchising's brand and license, was responsible for the day-to-day operations of the Holiday Inn Express & Suites Southfield Detroit.

c. Through his franchise agreement and relationship with Defendant Holiday Franchising, Namou was required to implement the training, procedures, and policies as instructed by Defendant Holiday Franchising. He was also required to provide Holiday Franchising with a percentage of gross room revenue and money generated from the operation of the Holiday Inn Express & Suites Southfield Detroit, including the rates charged for the rooms within which

18

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff was trafficked, required to use the wireless internet access provided by Holiday Franchising, and was required to comply with the standards and policies outlined in Holiday Franchising's operating manual and/or franchise agreement.

    d. As the operator of the Holiday Inn Express & Suites Southfield Detroit, operating under the supervision of Holiday Franchising, where Plaintiff was trafficked, Defendant Namou knowingly benefitted or received something of value from its harboring, facilitation of, or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

    iv. Defendant Namou is subject to the jurisdiction of this Court because he is a resident and citizen of the State of Michigan and does substantial business in Michigan.

22. Defendant Extended Stay America, Inc. ("ESA Inc.") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. ESA owns, operates, and franchises its branded hotels throughout the United States. ESA Inc. is a hospitality company that, at the time of the incidents alleged herein, with and through its franchisees, offered public lodging services at the Extended Stay America Detroit Canton located at 2000 Haggerty Road, Canton, Michigan 48187; the Extended Stay America Detroit Southfield Northwestern Highway located at 28500 Northwestern Highway, Southfield, Michigan 48034; and the Extended Stay America Detroit Southfield I-696 located at 26250 American Drive, Southfield, Michigan 48034. Plaintiff was trafficked at all three ESA Inc. branded hotels.

    i. As a hotel operator brand, ESA Inc. controls the training, procedures, and policies for the hotels that bear its brand name and with whom it has franchise agreements, including the Extended Stay America Detroit Canton, the Extended Stay America Detroit Southfield Northwestern Highway, and the Extended Stay America Detroit Southfield I-696 where Plaintiff was trafficked.

    ii. ESA Inc. requires franchisees, including its franchisee Extended Stay Management, LLC - the franchisee for the Extended Stay America Detroit Canton, the Extended

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

Stay America Detroit Southfield Northwestern Highway, and the Extended Stay America Detroit Southfield I-696 where Plaintiff was trafficked – to strictly conform with its brand standards, and to comply with all local, state, and federal laws.

iii. Through ESA Inc.'s franchise agreements with Extended Stay Management, LLC, ESA Inc. knowingly benefitted or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which Plaintiff was trafficked at the Extended Stay America Detroit Canton, the Extended Stay America Detroit Southfield Northwestern Highway, and the Extended Stay America Detroit Southfield I-696.

iv. As part of its franchise agreements with Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton; d/b/the Extended Stay America Detroit Southfield Northwestern Highway; and d/b/a the Extended Stay America Detroit Southfield I-696, ESA Inc. provided, *inter alia*, on-site and other training assistance, received and receives a percentage of the gross room revenue from money generated by the operations of the aforementioned hotels where Plaintiff was trafficked, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of the aforementioned hotels, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked; required its franchisees, including Extended Stay Management, LLC to provide it with a portion of processing fees, required Extended Stay Management, LLC to use the wireless internet provided by ESA Inc., and required with Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton; d/b/a the Extended Stay America Detroit Southfield Northwestern Highway; and d/b/a the Extended Stay America Detroit Southfield I-696 to comply with the policies and standards in ESA Inc.'s operating manual and/or franchise agreements.

v. Through its franchise agreements with Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton; d/b/a the Extended Stay America Detroit

20

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

Southfield Northwestern Highway; and d/b/a the Extended Stay America Detroit Southfield I-696, ESA Inc. knowingly benefitted or received something of value from its facilitation of or participation in a joint venture which it knew or should have known to engage in sex trafficking through the room rentals within which Plaintiff was trafficked.

 vi. ESA Inc. is subject to the jurisdiction of this Court because it regularly transacts business in Michigan, franchises hotels in Michigan including the via its franchise agreements with Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton; d/b/a the Extended Stay America Detroit Southfield Northwestern Highway; and d/b/a the Extended Stay America Detroit Southfield I-696; contracts to supply services in Michigan, caused indivisible injuries to Plaintiff in a common course of conduct arising in Michigan, and knowingly profited from an illegal sex trafficking venture along with Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton; d/b/a the Extended Stay America Detroit Southfield Northwestern Highway; and d/b/a the Extended Stay America Detroit Southfield I-696.

23. Defendant Extended Stay Management, LLC ("ESA Management") d/b/a Extended Stay America Detroit Canton; d/b/the Extended Stay America Detroit Southfield Northwestern Highway; and d/b/a the Extended Stay America Detroit Southfield I-696 is a Delaware limited liability company. ESA Management is a franchisee of Defendant ESA Inc. and does business as Extended Stay America Detroit Canton located at 2000 Haggerty Road, Canton, Michigan 48187; the Extended Stay America Detroit Southfield Northwestern Highway located at 28500 Northwestern Highway, Southfield, Michigan 48034; and the Extended Stay America Detroit Southfield I-696 located at 26250 American Drive, Southfield, Michigan 48034. Directly and through its franchise relationship and agreement with Defendant ESA Inc., ESA Management offered public lodging services at the aforementioned ESA Inc. branded hotels.

 i. Defendant ESA Management is a franchisee of Defendant ESA Inc.

 ii. The Extended Stay America Detroit Canton located at 2000 Haggerty Road, Canton,

21

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Michigan 48187 is an ESA Inc. brand hotel.

iii.  Extended Stay America Detroit Southfield Northwestern Highway located at 28500 Northwestern Highway, Southfield, Michigan 48034 is an ESA Inc. brand hotel.

iv.  Extended Stay America Detroit Southfield I-696 located at 26250 American Drive, Southfield, Michigan 48034 is an ESA Inc. brand hotel.

v.  ESA Management, as a hotel operator under Defendant ESA Inc.'s brand flag, is responsible for the day-to-day operations at Extended Stay America Detroit Canton, Extended Stay America Detroit Southfield Northwestern Highway, and Extended Stay America Detroit Southfield I-696.

vi.  Through its franchisee relationship and agreements with Defendant ESA Inc., ESA Management is required to implement the training, procedures, and policies as instructed by Defendant ESA Inc.  It is also required to provide ESA Inc. with a percentage of gross room revenue and money generated from the operation of the Extended Stay America Detroit Canton, Extended Stay America Detroit Southfield Northwestern Highway, and Extended Stay America Detroit Southfield I-696, including the rates charged for the rooms within which Plaintiff was trafficked, required to use the wireless internet access provided by ESA Inc.; and was required to comply with the standards and policies in ESA Inc.'s operating manual and franchise agreements.

vii.  As the operator of Extended Stay America Detroit Canton, Extended Stay America Detroit Southfield Northwestern Highway, and Extended Stay America Detroit Southfield I-696, operating under the supervision of ESA Inc., where Plaintiff was trafficked, Defendant ESA Management knowingly benefited or received something of value from its harboring, facilitation of, or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in.

viii.  Defendant ESA Management is subject to the jurisdiction of this Court because it contracts to supply services in Michigan, purposefully created contacts within

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

22

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Michigan that are related to Plaintiff's causes of action, caused indivisible injuries to Plaintiff in Michigan, and knowingly profited from an illegal sex trafficking venture at the Extended Stay America Detroit Canton, Extended Stay America Detroit Southfield Northwestern Highway, and Extended Stay America Detroit Southfield I-696.

24.      Defendant Red Roof Inns, Inc. ("RRI") offers public lodging services directly and through its affiliates, subsidiaries, and franchisees. Defendant RRI is a Delaware corporation with its principal place of business located in New Albany, Ohio 43054.

   i.   RRI owns, supervises, manages, controls, operates, and/or franchises the Red Roof Inn Detroit - Plymouth/Canton located at 39700 Ann Arbor Rd., Plymouth, Michigan 48170 where Plaintiff was trafficked.

   ii.  RRI owns, supervises, manages, controls, operates, and/or franchises the Red Roof Inn Detroit - Royal Oak Madison Heights located at 32511 Concord Dr., Madison Heights, Michigan 48071.

   iii. RRI owns, supervises, manages, controls, operates and/or franchises the Red Roof Inn Ann Arbor - University of Michigan South located at 3505 S. State St, Ann Arbor, Michigan 48108 where Plaintiff was trafficked.

   iv.  RRI owns, supervises, manages, controls, and/or operates the Red Roof PLUS+ Ann Arbor - University of Michigan North located at 3621 Plymouth Rd., Ann Arbor, Michigan 48105.

   v.   The Plymouth/Canton Red Roof Inn, UMS Madison Heights Red Roof Inn, and Madison Heights Red Roof Inn are all Red Roof Inn-branded properties; the UMN Red Roof PLUS+ is a Red Roof PLUG+ branded property. These hotels will collectively be referred to as the "RRI Hotels."

   vi.  RRI owns both the Red Roof Inn and Red Roof PLUS+ brands.

   vii. RRI exercises day-to-day control over the RRI Hotels through its brand standards and retains control over the RRI Hotels under the terms of its franchise agreements.

   viii. As the principal and as a hotel operator, RRI controls the training and policies for its

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

23

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Red Roof Inn and UMN Red Roof PLUS+ branded hotels, including the RRI Hotels where Plaintiff was trafficked. RRI represents that it considers guest safety and security important and requires the branded hotels in its portfolio to comply with RRI brand standards and all local, state, and federal laws.

ix. Upon information and belief, RRI also controls a uniform and required reservation and marketing system, credit processing system, and training and policy on brand standards, including policies on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems with back-end management by RRI, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at its Red Roof Inn and UMN Red Roof PLUS+ brand hotels, including the RRI Hotels where Plaintiff was trafficked.

x. Through RRI's relationship with the staff at the RRI Hotels where Plaintiff was trafficked and where Plaintiff's traffickers were guests or visitors, RRI knowingly benefited, or received something of value, from its participation in a venture which it knew or should have known to be engaged in sex trafficking through royalty payments, licensing fees, and percentages of the gross room revenue which RRI is entitled to under the franchise agreements.

xi. RRI benefits financially by receiving a percentage of the gross room revenue from the money generated by the operations of its hotels, including through a percentage of the revenue generated at the RRI Hotels from the rates charged on the rooms in which Plaintiff was trafficked for sex.

xii. RRI regularly conducts business in the State of Michigan, derives substantial revenue from services rendered in Michigan, including through the operation of numerous hotels in Michigan such as the RRI hotels where Plaintiff was trafficked and has

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

caused indivisible injuries to Plaintiff in Michigan, and profited from an illegal sex trafficking venture at the RRI Hotels.  RRI is therefore subject to the jurisdiction of this Court.

25.     Whenever reference is made in this Complaint to any act, deed, or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

27.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

28.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102 as, "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three elements of sex trafficking as a criminal offence: the act, meaning, and purpose.

29.     To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in reverse.  Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. §§ 1589 and 1590.  The crime of slavery can then be divided into the two (2) elements remaining: the act and the means.  The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. § 1590, while the *means* is labor, "obtained or provided by force, fraud, or coercion," and is codified as a violation of 18 U.S.C. § 1589d.

30.     Thus, while the complete definition of "sex trafficking" is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. § 1591, it is nevertheless a long-

25

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

recognized and familiar atrocity.

31.     Pursuant to 18 U.S.C. § 1591 (a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking. This includes, at minimum, *both* the "traffickers" who recruit, harbor, transport, and provide individuals for force commercial sex work and the "Johns" or "buyers" who obtain, solicit, or patronize forced commercial sex work.

32.     The TVPRA is a remedial statute and should be liberally construed. It is a cardinal principle of statutory construction that a statute should, on the whole, be construed so that no clause, sentence, or word shall be considered superfluous, void, or insignificant.

33.     The requirements for direct (or indirect) liability under § 1595 (a) based on a beneficiary theory has been stated as follows: (1) the entity must knowingly benefit, financially or by receiving anything of value; (2) from the participation in a venture; and (3) that the entity knew or should have known engaged in sex trafficking.

34.     Receipt of a percentage (or the entirety) of the room rentals from the rooms Plaintiff was victimized and trafficked is sufficient for establishing a knowing financial benefit as well as licensing, franchising, and other fees paid from room rentals under § 1595 (a).

35.     Actual knowledge or a common business purpose is not necessary to establish "participation" under § 1595 (a); to do so would render the "should have known" language in § 1595 meaningless.

36.     Plaintiff need not provide an underlying criminal offense under § 1591 in order to establish liability under the TVPRA.

37.     An overt act in furtherance of the venture is not necessary to establish "participation" under § 1595 (a).

38.     Under the TVPRA, in the absence of a direct association with a sex trafficking venture, it is sufficient to show a continuous business relationship between a trafficker and local hotels through the rental of rooms so that it would appear that the trafficker and the hotels have established a pattern of conduct or could have been said to have or have had a tacit agreement.

39.     Constructive knowledge akin to a negligence standard is sufficient for establishing what

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

26

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Defendants "should have known" under § 1595 (a).

40.     Being on notice of the prevalence of commercial sex trafficking generally and at hotels under the Defendants' brands, or operated directly by a brand defendant, are sufficient constructive notice.

41.     Being on notice of the prevalence of commercial sex trafficking generally and at hotels, in conjunction with the open and obvious signs of the same, are sufficient for constructive and actual notice.

<b>FACTUAL ALLEGATIONS</b>

**A.  The Sex Trafficking of Plaintiff**

42.     The facts alleged herein stem from human trafficking for commercial sex in Michigan. While victimized by her trafficker, Plaintiff was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment at the hotels owned, operated, supervised, franchised, and/or branded by Defendants from 2003 through 2014.

43.     Plaintiff met her trafficker in or around 2003.  Under the guise of seeking a romantic partnership, Plaintiff's trafficker began dating her before becoming violent and selling her for commercial sex.

44.     Plaintiff was sold by her trafficker for sex anywhere between five to ten times per night. Each "sale" was to a different buyer.

45.     Plaintiff's trafficker used Defendants G6; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI's Wi-Fi to post advertisements, talk to Plaintiff's buyers, and watch and record her sexual acts.

46.     Plaintiff's buyers entering hotels were non-paying guests and left shortly after they arrived. Plaintiff's trafficker would wait in the lobby or visibly pace the parking lot while Plaintiff was sex trafficked at Defendants' branded hotels.  The foot traffic to the rooms where Plaintiff was harbored was constant and obvious.

47.     Plaintiff's trafficker followed a repetitive process which, alongside several other red flags

27

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

and direct employee interactions, alerted or should have alerted Defendants to Plaintiff's trafficking at their branded hotels, including but not limited to:

    i.    Paying for rooms in cash;

    ii.    Paying for extended stays on a day-to-day basis;

    iii.    Requesting special rooms, including rooms in more secluded areas or by exits or late check out;

    iv.    Plaintiff's physical appearance, including being malnourished, bruised, beaten, drugged, with visible cigarette burns, and clothed with attire inappropriate for the weather;

    v.    Plaintiff and Plaintiff's trafficker's behavior, including the trafficker's complete control over Plaintiff, her ID, and her money;

    vi.    Plaintiff's trafficker's solicitation of buyers in and around the Defendants' branded hotels, including the lobby and parking lot;

    vii.    Using Defendants' Wi-Fi to post advertisements for commercial sex;

    viii.    Continuous processions of unregistered buyers entering and exiting the rooms;

    ix.    Indicia of commercial sex within the room, including an inordinate number of used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

    x.    Obvious signs of illegal drug use;

    xi.    Excessive requests for sheets, cleaning supplies, and room service;

    xii.    Extraordinary violence and loud disturbances in common and public hotel areas;

    xiii.    Audible pleas to branded hotel staff and guests for help;

    xiv.    Hotel guest complaints;

    xv.    Direct employee encounters and witness accounts of Plaintiff's suffering in and around Defendants' branded hotels' premises; and

    xvi.    Online reviews indicating the prevalence of sex trafficking and criminal activity at Defendants' owned, operated, branded, or franchised hotels.

48.    The trafficking at Defendants' branded hotels was obvious and observed by hotel staff and

Levin Simes Abrams LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

guests.  In order to continue reaping the profits of Plaintiff's exploitation, Defendants chose not to implement and enforce effective anti-trafficking measures to protect Plaintiff, and others like her, from the obvious criminal activity occurring at their branded hotels.

49.    Had Defendants not harbored known and suspected human traffickers in exchange for financial gain, Plaintiff's trafficker could not have successfully arranged for her to be continually sold for sex at Defendants' branded hotels.

50.    Had Defendants not had business models which permitted, facilitated, and encouraged ongoing human trafficking at their branded hotels, Plaintiff would not have been trafficked at Defendants' branded hotels for over a decade.  The open and obvious signs of Plaintiff's sex trafficking would and should have resulted in Plaintiff's trafficking being reported, prevention of further room rentals to her trafficker, and an earlier end to Plaintiff's exploitation at Defendants' branded hotels.

51.    Similarly, had Defendants' proclaimed anti-trafficking efforts in training, policies, and procedures at their branded hotels in fact been implemented, it would have been impossible for Plaintiff to be repeatedly exploited.

52.    Prior to, during, and following the incidents described herein, Defendants had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns observable via video surveillance of their hotels and oral or written complaints regarding the same.  Defendants chose to prioritize profits over people, and elected not to take any action to curtail sex trafficking at their branded hotels.

53.    The impact of Plaintiff's trafficking has emotionally and physically injured Plaintiff, who suffers immensely as a result of the horrors inflicted upon her at Defendants' branded hotels.

54.    Plaintiff was trafficked for over a decade, from 2003 to 2014.  Plaintiff was sold for sex approximately 340 days out of a 365-day calendar year for 11 years.

The Madison Heights Motel 6 Owned and Operated by G6

55.    Plaintiff was trafficked at the Madison Heights Motel 6 that was branded, owned, and operated by G6 from 2003 to 2014.  There were open and obvious signs of sex trafficking, including but not limited to approximately fifteen (15) rooms being rented at the same time to traffickers of women forced into commercial sex work.

29

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**The Motel 6 of Warren Owned and Operated by G6 until 2011 when Franchisee Warren Economy Took Over Day to Day Operations**

56.     Prior to 2011, the Motel 6 of Warren was company owned and operated by G6.  Plaintiff was trafficked at this location from 2003 through 2012; this occurred approximately once per month.

57.     The signs of sex trafficking were so open and obvious that hotel employees did not want Plaintiff and her trafficker in the hotel yet failed to call law enforcement or otherwise aid Plaintiff and other women who were trafficked at the Motel 6 of Warren.

**The Fairfield Inn & Suites by Marriott Detroit Farmington Hills, Branded by Marriott and Operated by Franchisees F.I. Farmington (2003-2005) and Farmington Hospitality (2005-2014)**

58.     Plaintiff was trafficked at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills from 2003 through 2014.

59.     Plaintiff's trafficker brought her to this hotel with such frequency that hotel staff would hold or reserve the room for her trafficker.  Plaintiff's trafficker beat her so badly that he broke her bones and subsequently took her shoes, coat, and phone before leaving her at the hotel.

60.     Without shoes or a phone, and while suffering broken bones, Plaintiff begged hotel staff to give her a phone to call her brother.

61.     Due to the trafficking Plaintiff endured, it was at the Fairfield Inn & Suites by Marriott Detroit Farmington Hills that Plaintiff attempted suicide in 2014 by purposefully walking in front of a moving vehicle.  This was the only means of escape for Plaintiff.

**The Knight's Inn Sterling Heights Licensed and Branded by Knights Franchise and Operated Day to Day by Franchisee Akram Namou**

62.     Plaintiff was trafficked at this hotel from 2003 to 2014.  Plaintiff recalls the name of the manager who would look at her with disgust.  This man told Plaintiff's trafficker to be more quiet while Plaintiff was being trafficked, stating "this is not your home." And yet he did nothing to help.

**The Hawthorn Suites by Wyndham Detroit Southfield Franchised, Licensed, and Branded by Hawthorn Franchising via its Franchise Agreement with Franchisee Akram Namou and the Holiday Inn Express & Suites Southfield – Detroit Licensed and Branded by Holiday Franchising and Operated by Franchisees Akram Namou and Southfield Hotel**

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

63. Plaintiff was trafficked at the hotel located at 25100 Northwestern Highway, Southfield, Michigan 48075. For the years 2003 to 2006, the hotel operated as a Hawthorn Suites by Wyndham and was franchised to Akram Namou. For the years 2006 through 2014, the hotel operated as a Holiday Inn Express & Suites Southfield, and was franchised to franchisees Akram Namou and Southfield Hotel.

64. Plaintiff was trafficked here beginning in 2003. There were open and obvious signs of sex trafficking, including young and underage girls whose traffickers or pimps rented them rooms. Plaintiff, recognizing how young some of these girls were, would often take their "jobs" to protect them.

> The Extended Stay America Detroit Canton, The Extended Stay America Detroit Southfield, and the Extended Stay America Detroit Southfield I-696 All Branded by ESA Inc. and Franchised by ESA Management

65. Plaintiff was trafficked at these locations commencing in approximately 2005 through 2014. Plaintiff's trafficker would take her to these hotels less frequently than others. However, there were open and obvious signs of sex trafficking, including a man visiting from another country who would visit with regularity and call the hotel asking for Plaintiff. Plaintiff recalls Hurricane Katrina refugees being housed at the Canton location.

66. Despite Plaintiff's trafficker brining her to these hotels less frequently, employees working the front desk would recognize her and she knew their names. Plaintiff had to go to a front desk clerk for help on more than one occasion due to her trafficker's abuse. This includes at least one instance where Plaintiff's trafficker had another individual with a gun stand watch over her when Plaintiff's trafficker need to leave.

> The RRI Hotels Branded by RRI (Plymouth/Canton RRI, UMS Madison Heights RRI; Madison Heights RRI) and Branded by Red Roof PLUG+ (UMN Red Roof PLUS+) and Owned, Supervised, Managed, Controlled, Operated, and/or Franchised By RRI

67. Plaintiff was trafficked so often at the Plymouth/Canton RRI that she considered this her home. Plaintiff's trafficker would, at times, keep her there for months. Multiple times, Plaintiff packed a suitcase and tried to run and escape. Hotel employees would occasionally hide her in

31

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

different hotel rooms in an attempt to help her, but did not call law enforcement, take steps to stop the trafficking, and always welcome Plaintiff's trafficker back and rented rooms to him. Plaintiff's trafficker once threw a fire extinguisher through a window out of anger. Plaintiff was trafficked at this hotel from 2003 to 2013. Plaintiff was trafficked at the UMS Madison Heights RRI and Madison Heights RRI between 2011 and 2014.

68.     Plaintiff was trafficked at the UMN Red Rood PLUS+ between 2011 and 2014. While this hotel was largely used to house patients undergoing radiation treatment, the hotel employees knew what to do with "undesirable" guests: relegate them to rooms in the back corners of the hotels. Plaintiff and her trafficker were placed in the same hotel room every time he brought her to this location.

## B.     The Defendants' Knowledge of the Role of Their Brands, Franchises, and Hotels in the Sex Trafficking Industry

69.     Human trafficking is the world's fastest growing crime.[5]   While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of *all* illegal drugs.[6]

70.     Sex traffickers, or "pimps," use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

71.     The hospitality industry plays a crucial role in the sex trade.[7] The trope of the "no-tell motel," is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability – particularly when traffickers pay for rooms in cash - making them ideal venues for crime and sex trafficking in particular.

72.     Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising,

---

[5] Human Trafficking is the World's Fastest Growing Crime, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.
[6] Profits and Poverty: The Economics of Forced Labor, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.
[7] Giovanna L. C. Cavagnaro, Sex Trafficking: The Hospitality Industry's Role and Responsibility, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

32

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

ESA Inc., and RRI, and their franchisees operating under their brand flags and licenses, are active and prominent members of the hotel industry and are, in fact, leaders within it. Consequently, Defendants played and play a crucial role in the sex trafficking industry.[8]

73.    In 2010, the United States government released its Trafficking in Persons Report, which included an assessment of trafficking in the United States. The 2010 Trafficking in Persons Report stated that approximately 12.3 million adults and children were in forced labor, bonded labor, and forced prostitution around the world, but that only 4,166 trafficking prosecutions were successful in 2009.[9]

74.    During a speech in New York City in September 2012, President Obama stated that human trafficking, "ought to concern every person, because it is a debasement of our common humanity. It ought to concern every community because it tears at our social fabric.  It ought to concern every business because it distorts markets.  It ought to concern every nation, because it endangers public health and fuels violence and organized crime."[10]

75.    Statistics released in 2014 by the International Labor Organization ("ILO") showed that approximately 4.5 million people were victims of forced sexual exploitation globally and that the violation of their human rights yielded an estimated annual profit of $99 billion dollars for sex traffickers worldwide.[11]  Put another way, the numbers showed that sex trafficker's annual profit per victim was approximately $22,000.00.[12]

76.    A scholarly article published in 2015 estimated that pimps could earn $25,000.00 to $33,000.00 per week selling in the Atlanta, Georgia area.[13] This volume of and profit from sex trafficking also aligned with internet advertising for the sex trafficking industry occurring in roughly the same time period. For example, in 2015, one advertisement in the Atlanta section of the

---

[8] *Id*.

[9] CNN Wire Staff, *U.S. human trafficking report includes U.S. cases for first time*, CNN.com (Jun. 14, 2010), available at https://www.cnn.com/2010/US/06/14/human.trafficking/index.html#.

[10] President Barack Obama, Remarks to the Clinton Global Initiative (Sept. 25, 2012), *available at* https://obamawhitehouse.archives.gov/the-press-office/2012/09/25/remarks-president-clinton-globalinitiative.

[11] International Labour Office, *Profits and Poverty: The Economics of Forced Labour* (2014), at 13, *available  at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/--- declaration/documents/publication/wcms_243391.pdf.

[12] *Id*. at 15.

[13] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT*, 15(15), 4 (2015).

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

33

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

www.backpage.com website triggered 181 clients, and calls or texts from twenty-seven (27) men expressing interest – in a span of just ninety (90) minutes.[14]

77.     In December 2015, President Obama appointed eleven (11) survivors of human trafficking to the inaugural United States Advisory Council on Human Trafficking to advise and make recommendations on federal anti-trafficking policies to the President's Interagency Task Force to Monitor and Combat Trafficking in Persons.[15]

78.     The United States Department of Justice ("DOJ") brought 248 sex trafficking prosecutions in fiscal year 2015 and secured convictions against 291 sex traffickers.[16] In the previous year, the DOJ convicted a total of 184 human traffickers (inclusive of labor trafficking) and in the subsequent year, the DOJ convicted a total of 439 human traffickers (inclusive of labor trafficking).[17]

79.     Despite efforts of governmental and non-governmental organizations to combat human trafficking, the hospitality industry as a whole, including Defendants, continued to lag behind in its efforts to prevent human trafficking. A 2015 study showed that forty-five percent (45%) of children who suffered sexual exploitation report that the sexual exploitation took place in a hotel.[18]

80.     Even estimates by attorneys *for the* hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[19]  The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.[20]

81.     While specific to each Defendant, the problem is industry wide. In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[21] Due

---

[14] *Id*. at 15.
[15] U.S. Dep't of State, *2016 Trafficking in Persons Report* (2016), at 41, *available at* https://www.state.gov/documents/organization/258876.pdf.
[16] *Id*. at 389.
[17] Human Rights First, *Fact Sheet 2017* (2017), *available at* http://www.humanrightsfirst.org/sites/default/files/TraffickingbytheNumbers.pdf.
[18] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[19] Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).
[20] U.S. Dep't of State, *supra* n.31, at 387.
[21] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

to the overall complacency of the hospitality industry in addressing the issue, hotels are *the* venue of choice for sex trafficking.[22]

82.     Traffickers use hotels as the hub of their operations.  Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as, "in call."

83.     Hotels are also the venue of choice for buyers seeking a so-called "out call," wherein the buyer rents a hotel room, and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (i.e., those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.

84.     Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property and local level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

85.     Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

86.     Aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from dangers that were known, or should have been known, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.

87.     As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[23]

88.     Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual

---

[22] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).
[23] *Supra* at note 13.

35

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs.[24]

89.     From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking in the hotels they own, operate, supervise, franchise, or brand under their flag.

90.     Obvious signs of sex trafficking at a hotel, including Defendants' brand hotels, including the franchise locations and other hotels at issue in this case, may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[25]

91.     Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[26] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand and hotel standards.

92.     Hospitality companies can and should mandate that all staff working at all hotels they own, operate, franchise, and operate under their brand flags complete sex trafficking training.[27]

93.     Between 2007 and March 2015, more than 1,400 human trafficking cases have been reported

---

[24] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[25] *Id. See also*, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf;)

[26] *Supra* at note 13.

[27] *Id*.

36

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

to the National Trafficking Resource center.[28]

94.     "75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…[u]nfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff.[29]

95.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant G6 between 2008 and 2019.

96.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant Marriott between 2008 and 2019.

97.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant Knights Franchise between 2008 and 2019.

98.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant Hawthorn Franchising between 2008 and 2019.

99.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant Holiday Franchising between 2008 and 2019.

100.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant ESA Inc. between 2008 and 2019.

101.     Upon information and belief, other publicly available information regarding trafficking in hotels was received and reviewed by Defendant RRI between 2008 and 2019.

102.     Defendants have been cognizant of their role and responsibilities in the sex trafficking industry for years.

103.     Upon information and belief, between at least 2008 to 2019, Defendant G6 participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

104.     Upon information and belief, between at least 2008 to 2019, Defendant Marriott participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

105.     Upon information and belief, between at least 2008 to 2019, Defendant Knights Franchise

---

[28] Polaris, *Human Trafficking and the Hotel Industry* (2015), *available at* https://polarisproject.org/resources/human-trafficking-and-hotel-industry.
[29] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).

37

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

106. Upon information and belief, between at least 2008 to 2019, Defendant Hawthorn Franchising participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

107. Upon information and belief, between at least 2008 to 2019, Defendant Holiday Franchising participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

108. Upon information and belief, between at least 2008 to 2019, Defendant ESA, Inc. participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

109. Upon information and belief, between at least 2008 to 2019, Defendant RRI participated in meetings through its trade organizations in which sex trafficking in its hotels was discussed.

110. Nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[30] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and Defendants. Both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[31]

111. Upon information and belief, Defendants G6; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI were aware of these campaigns.

---

[30] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

[31] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

112. Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

        **i.    Each Defendant Has Been Uniquely Aware of Trafficking at Hotels Across Their Brands Because of Their Internet Policies Yet Knowingly Profit from Sex Trafficking While Maintaining Their Public Image**

113. Defendants each understand the importance that internet access can have to facilitate human trafficking.

114. To assist Defendants and other corporate brands in combatting sex trafficking within their hospitality companies, ECPAT developed and launched The Code of Conduct for the Protection of Children from Sexual Exploitation in Travel and Tourism ("The Code") in 1996 and ECPAT-USA in the United States in 2004.[32]

115. ECPAT-USA also identifies hotel-specific best practices for preventing sex trafficking, including but not limited to:[33]

    i.    Developing a formal policy against trafficking;

    ii.    Developing a protocol for response;

    iii.    Conducting periodic training on indicators;

    iv.    Not renting by the hour;

    v.    Not permitting cash payments;

    vi.    Blocking "internet access to popular websites for online sex ads";

    vii.    Monitoring "online sex ads such as Craigslist and Backpage for your hotel name and pictures of your rooms and guests";

    viii.    Changing wi-fi passwords in rooms and cafes regularly;

---

[32] THE CODE.ORG, What is the Code?, https://thecode.org/about/ (last visited Apr. 1, 2022); *see also* ECPAT-USA, *No Vacancy For Child Sex Traffickers Impact Report* (2017), https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/NoVacany_Report.pdf.

[33] ECPAT-USA, ECPAT-USA Anti-Trafficking Hotel Checklist, https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/5cd329e8a4222f20baf5378b/1557342696892/ECPAT-USA_AntiTraffickingHotelChecklist.pdf (last visited Aug. 11, 2022).

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

ix.  Requiring all visitors be logged, including guest name, visitor name, arrival time, departure time, and room number;

x.  Actively greeting and speaking with all visitors arriving at night;

xi.  Watching for a trends of visitors to the same room; and

xii.  Being aware of rooms with excess condoms, lubricants, and towels and reporting these indicators to management.

116.  Even the Defendants that are signatories to ECPAT only pay lip service to its goals, while failing to implement its most effective guidance. Their membership is nothing more than a fig leaf.

117.  Instead, Defendants continue to profit from the sex trafficking of Plaintiff, and other survivors like her.

118.  For years, Defendants have flagrantly contravened the spirit of ECPAT by failing to seriously implement its most effective guidance.

119.  Defendants have refused to implement effective anti-trafficking measures and training, in order to preserve profits and cut costs. Instead, Defendants hired media professionals to make public claims to their investors and customers that they are addressing the longstanding problem of human trafficking at their branded hotels.

120.  Defendants agree human trafficking is a problem, but never admit that it is a problem at *their* branded hotels.

121.  Defendants' "solution" to the problem is always the same: publicly committing to more employee training, while failing in practice to act.  This employee training has never occurred in earnest or *en masse*.  For instance, according to ECPAT's reports, the actual number of employees trained by hotel industry leaders like Defendants' is abysmal.[34]

122.  Defendants have long engaged in a coordinated campaign to avoid bad publicity while preserving the profits they derive from providing accommodation to human traffickers and buyers, which ensures Defendants remain as complacent as their peers in facilitating sex trafficking at their

---

[34] KRISTINE ADAMS & MICHELLE GUELBART, ECPAT-USA, STAMPING OUT EXPLOITATION IN TRAVEL: BENCHMARKING THE TRAVEL INDUSTRY'S PROGRESS ON FIGHTING HUMAN TRAFFICKING AND THE COMMERCIAL SEXUAL EXPLOITATION OF CHILDREN 22 (2019).

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

branded hotels.

123.     Defendant G6 is the face and a signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking in their hotel properties.

124.     Defendant Marriott is the face and a signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking in their hotel properties.

125.     Defendant G6 publicly committed to educating their hotel properties on human trafficking and should have created brand standards for implementation, mandates, and operations.

126.     Defendant Marriott publicly committed to educating their hotel properties on human trafficking and should have created brand standards for implementation, mandates, and operations.

127.     Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI all either (1) personally provide free internet and wi-fi at the hotels that are company-owned and operated[35] or (2) require their franchisees and hotel operators to use the wi-fi provided by Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI.

128.     Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI require hotel properties to use brand approved internet providers, who are sufficiently knowledgeable, to provide cybersecurity and prevent illegal activity from occurring at their hotels.

129.     Defendants hotels are provided access to internet data which they know will help enhance customer service or otherwise permits the brand to exploit by other means.

130.     Internet access at the hotel properties is through two means:

    i.     First, Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI provide internet access to guests through wireless internet accessible in their guest rooms and;

    ii.     Second, provide internet access through publicly accessible wireless networks accessible in the lobby of other common areas of their brand hotels.

---

[35] The Madison Heights Motel 6 through 2014 and the Motel 6 of Warren until 2011.

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

131. Defendants collect data on internet usage through the wireless internet services that Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI provide and mandate be used. Such data includes:

     i.    The IP address and other identifying information for all devices that access the internet through G6, Marriott, Choice, and Hilton's wireless networks;

     ii.    The identity of websites accessed by those devices through the IP addresses of the servers that host those websites; and

     iii.    Information about the user accessing the internet through G6, Marriott, Choice, and Hilton's wireless networks, including the users' room number, a user-provided name, and other identifying information.

132. In violation of their federal statutory obligations under the TVPRA, Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI failed to monitor internet use at hotels across their brands and the franchised hotels at issue in this case, in order to identify signs and perpetrators of commercial sex trafficking within their walls.

133. Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI knew or should have known of the prevalent use of websites like Backpage.com, Craigslist.com, and other similar websites traffickers use to pose advertisements for sex within their properties.

134. Despite that knowledge, Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI made no effort to flag or block the use of such websites by traffickers and instead exercised willful blindness to use of their wireless networks to further human trafficking in their hotels, including the hotels where Plaintiff was trafficked.

135. Defendants G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI's blindness facilitated trafficking at their hotels by allowing traffickers to post unlawful advertisements through their own wireless networks in violation of their own policies on the use of said networks.

**C. DEFENDANTS G6, F.I. FARMINGTON, FARMINGTON HOSPITALITY, AKRAM NAMOU, SOUTHFIELD HOTEL, ESA MANAGEMENT, AND RRI ARE DIRECTLY LIABLE UNDER SECTION 1595 FOR THEIR INACTION**

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

42

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**AND FAILURES RESUTLING IN COMMERCIAL SEX TRAFFICKING AT THE HOTELS BRANDED, OPERATED, AND OWNED BY THEM**

136.    G6 has been on notice since as early as 2006 that sex trafficking occurs in the hotels they own, operate, supervise, and brand, and that the hotel industry is the hub of sex trafficking, yet all of them failed and persist in failing to fulfill their statutory responsibility resulting in commercial sex trafficking occurring in their branded, owned, supervised, and operated properties.

### i.    G6 is directly liable under the TVPRA

137.    G6 owned and operated the Madison Heights Motel 6 from 2003 through 2014 and the Motel 6 of Warren until 2011. While G6 was the owner and operator of these two hotels, there was no difference between G6 the brand and the Madison Heights Motel 6 and the Motel 6 of Warren.  G6 was not only a brand but also operated and controlled the day-to-day activities of the hotels.

138.    G6 failed to train, implement, and enforce any of its own anti-trafficking policy or policies to protect Plaintiff form being sex trafficked at the Madison Heights Motel 5 and the Motel 6 of Warren.

139.    G6 could and should have:

    i.    Distributed information to assist employees in identifying human trafficking for commercial sex;

    ii.    Provided a process for escalating human trafficking for commercial sex concerns within the G6 organization and its portfolio of hotels;

    iii.    Required regular reports of suspicious or criminal activity that indicates commercial sex trafficking to a centralized database for audit and analysis;

    iv.    Required employees to attend training related to human trafficking for commercial sex;

    v.    Provided new hire orientation on human rights and corporate responsibility;

    vi.    Provided training and education through webinars, seminars, conferences, and online portals;

    vii.    Developed and held ongoing training sessions on human trafficking; and/or

    viii.    Provided anti-trafficking checklists, escalation protocols, and information to

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

43

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

property management staff, or tracking performance indicators and key metrics on human trafficking prevention.

140.    Despite having actual and/or constructive knowledge of the extensive commercial sex trafficking occurring the hotels that operate under its brand flag and which it owns and operates, G6 repeatedly failed to stop or adequately address sex trafficking at its hotels, the Madison Heights Motel 6 and the Motel 6 of Warren.

### ii.    F.I. Farmington, Farmington Hospitality, Akram Namou, Southfield Hotel, ESA Management, and RRI are Directly Liable under the TVPRA

141.    F.I. Farmington, Farmington Hospitality, Akram Namou, Southfield Hotel, ESA Management, and RRI are Directly Liable under the TVPRA because they directly observed and at times participated and aided the sex trafficking of Plaintiff.  Because these entities were responsible for the day to day activities of the hotel, and had a physical presence at the hotels at which Plaintiff was trafficked, rented the rooms to Plaintiff's trafficker, and observed signs of trafficking, witnessed Plaintiff's attempts to escape, and observed and/or heard the physical abuse she suffered, these Defendants took no measures to curtail the trafficking of Plaintiff specifically or sex trafficking at their hotels more broadly.  To the contrary, these Defendants consistently and repeatedly rented rooms to Plaintiff's trafficker.

142.    Warren Economy, F.I. Farmington, Farmington Hospitality, Akram Namou, Southfield Hotel, ESA Management, and RRI failed to train, implement, and enforce any of its own anti-trafficking policy or policies to protect Plaintiff form being sex trafficked at the hotels they operated and managed under the auspices of G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, and ESA, Inc.

143.    Warren Economy, F.I. Farmington, Farmington Hospitality, Akram Namou, Southfield Hotel, ESA Management, and RRI could and should have:

    i.    Distributed information to assist employees in identifying human trafficking for commercial sex;

    ii.    Provided a process for escalating human trafficking for commercial sex concerns within the G6 organization and its portfolio of hotels;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

44

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

iii.    Required regular reports of suspicious or criminal activity that indicates commercial sex trafficking to a centralized database for audit and analysis;

iv.    Required employees to attend training related to human trafficking for commercial sex;

v.    Provided new hire orientation on human rights and corporate responsibility;

vi.    Provided training and education through webinars, seminars, conferences, and online portals;

vii.    Developed and held ongoing training sessions on human trafficking; and/or

viii.    Provided anti-trafficking checklists, escalation protocols, and information to property management staff, or tracking performance indicators and key metrics on human trafficking prevention.

144.    Despite having actual and/or constructive knowledge of the extensive commercial sex trafficking occurring the hotels Warren Economy, F.I. Farmington, Farmington Hospitality, Akram Namou, Southfield Hotel, ESA Management, and RRI operated daily, these defendants repeatedly failed to stop or adequately address sex trafficking at their hotels: Motel 6 of Warren, Fairfield Inn & Suites by Marriott Detroit Farmington Hills, Knight's Inn Sterling Heights, Hawthorn Suites by Wyndham Detroit Southfield, Holiday Inn Express & Suites Southfield Detroit, Extended Stay Management, LLC d/b/a Extended Stay America Detroit Canton, Extended Stay America Detroit Southfield Northwestern Highway, and Extended Stay America Detroit Southfield I-696; and Plymouth/Canton Red Roof Inn, UMS Madison Heights Red Roof Inn, Madison Heights Red Roof Inn, and UMN Red Roof PLUS+.

**D. DEFENDANTS G6, MARRIOTT, KNIGHT'S FRANCHISE, HAWTHORN FRANCHISING, HOLIDAY FRANCHISING, and ESA, INC. ARE VICARIOUSLY LIABLE FOR THE CONDUCT OF THE LOCAL OPERATING HOTELS WHO ARE EITHER THEIR FRANCHISE PARTNERS OR AGENTS DUE TO THEIR LEVEL OF CONTROL**

145.    Hotel brands or flags lend their name, likeness, and licenses (where applicable) to third parties, while the building and operations are run by a franchisee or third-party management company under the brands' control. In return, the parent brand or franchising company exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

45

a contract or franchise agreement and still profits from putting heads in beds.

146.    The average consumer, including Plaintiff and her traffickers, do not see this relationship. The parent brand gives the property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand. The same brand is emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

147.    In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS), and other online travel agency databases, the brand provides the local hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, and a website. Thus, booking and room reservations are controlled by the corporate parent brand or franchising/licensing entity.[36]  The corporate brand parents, and specifically here G6, Marriott, Knights Franchise, Hawthorn Franchising, Holiday Franchising, ESA Inc. and RRI, can see booking and reservation trends, including for those hotels where Plaintiff was trafficked.[37]

148.    The local hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

149.    Per the contract, franchise agreement, or direct ownership, supervision, and operation by the brand, the parent brand or franchisor/licensor may enforce these standards through periodic inspections and even termination of the agreement if the local hotel is found to be inadequate. The right of the parent hotel brand and franchisor/licensor to enforce their standards is also their responsibility.

i.    **G6 is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent Motel 6 of Warren**

150.    Defendant G6 is in a franchise agreement with Defendant Warren Economy d/b/a Motel 6

---

[36]  Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

[37]  Where a brand hotel allows cash to be accepted for payment monitoring and auditing these trends can become important to identifying locations where criminal activity and commercial sex trafficking may be occurring.

46

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

of Warren.

151. Defendant G6 has and exercised control over the Motel 6 of Warren after G6 franchised this hotel to Warren Economy. This control includes many issues relating to the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

152. G6 exercises actual control over its franchisees, including the Warren Economy d/b/a Motel 6 of Warren, through control over the brand standards which are reflected through the franchise agreements entered into with each franchisee subsidiary or operating hotel.

153. As a hotel operator brand, G6 controls the training, procedures, and policies for its brand hotels, including Motel 6 of Warren where Plaintiff was trafficked.

154. G6 requires franchisees, including Warren Economy d/b/a Motel 6 of Warren, to strictly conform with its brand standards, and considers guest safety and respect a component of its social impact.[38]

155. Through its franchise agreement with Warren Economy, G6 knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals Plaintiff was victimized in. Particularly in a context were G6 had itself owned and operated the same hotel prior to 2011 and its staff and employees witnessed open and obvious signs of sex trafficking with respect to the Plaintiff but also more broadly.

156. As part of its franchise agreement with Warren Economy, G6 provided, *inter alia*, on-site and other opening training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of the Motel 6 of Warren operated by Defendant Warren Economy, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Motel 6 of Warren operated by Warren Economy, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked; required Defendant Warren Economy and other franchisees to attend G6's annual conference;

[38] https://g6hospitality.com/about-us/our-impact-2/.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

47

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

offered additional training to Defendant Warren Economy as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Warren Economy, and required franchisees, including Defendant Warren Economy to comply with the standards and policies in G6's operating manual.

157. G6 requires the hotels in its portfolio – including the Motel 6 of Warren - to comply with G6 brand standards and all local, state, and federal laws.

158. G6 claims its teams regularly assess properties to ensure safety and security measures are in place.[39]

159. G6 may exercise or could have exercised control over the Motel 6 of Warren by:

    i.    distributing information to assist employees in identifying human trafficking;

    ii.    providing a process for escalating human trafficking concerns within the organization;

    iii.    requiring employees to attend training related to human trafficking;

    iv.    providing new hire orientation on human rights and corporate responsibility;

    v.    providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

    vi.    developing and holding ongoing training sessions on human trafficking; or

    vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

160. The G6 branded hotel where Plaintiff was trafficked was and is the actual and apparent agent of G6 and together they offer, or offered, public lodging services in the hotel. This agency relationship was created through Defendant G6's exercise of an ongoing and systematic right of control over its franchised hotels, beyond that which is necessary to maintain basic standards, by Defendant G6's operations, including the means and methods of how its hotels conducted business.

[39]https://g6hospitality.com/g6-hospitality-partners-with-ecpat-usa-to-combat-trafficking-and-exploitation/

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

161. An apparent agency also existed/exists between Defendant G6 and Motel 6 of Warren where Plaintiff was trafficked. Defendant G6 holds Motel 6 hotels to the public as possessing authority to act on its behalf.

162. As alleged herein, the employees of the Motel 6 of Warren observed and were aware of Plaintiff's plight, yet the policies and procedures from Defendant G6 to address this victimization were either inadequate to prevent her trafficking or were not properly implemented due to lack of training, education, and/or enforcement by Defendant G6.

163. As alleged herein and upon information and belief, the employees of the Motel 6 of Warren were aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant G6, including illegal website use, booking and reservation history, payment by cash for several rooms at a time and visits from multiple men throughout the day.

164. G6 was not only aware of Plaintiff's plight but also the failures of its own policies and procedures to protect her and prevent trafficking at the Studio 6 hotel where Plaintiff was trafficked.

165. Given Defendant G6's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including the Motel 6 of Warren, Defendant G6 breached its duties in the following ways:

    i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

    ii. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

    iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

    iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

    v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and/or

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

166. G6 brands may kick delinquent hotels out of its system, including the Motel 6 of Warren where Plaintiff was trafficked, since it is at the expense of terminating their royalty payments. However, it is seldom done. Nevertheless, this consequence is what provides G6 the actual control over the Motel 6 of Warren including control over how it confronts and deals with known traffickers and trafficking victims such as Plaintiff.

167. G6 accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

168. G6 knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

169. If Defendant G6 had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been made available to Plaintiff's trafficker and no profits would have been gained.

170. Acceptance of these profits was G6's affirmation of the Motel 6 of Warren's total inaction with regard to Plaintiff's trafficker and her victimization.

ii. **Marriott is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agents F.I. Farmington and Farmington Hospitality d/b/a Fairfield Inn & Suites Detroit Farmington Hills**

171. Defendant Marriott supervises and operates the Fairfield Inn & Suites Detroit Farmington Hills via its franchise agreements with F.I. Farmington and Farmington Hospitality.

172. Defendant Marriott has and exercised control over the local hotel with respect to many issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

173. Defendant Marriott is aware that human trafficking occurs at its local hotels and of how their

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

50

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

local hotels have dealt with it. Since 2006, defendant Marriott has issued and published policies to address the problem. By doing so, it has exercised control over its local hotels specifically with respect to how to identify and handle human trafficking at the local hotels. "At Marriott, our commitment to human rights is governed by Marriott's Human Rights Council. Marriott implements a human rights due diligence and risk management process to identify, prevent and mitigate relevant risks."[40]

174. Such due diligence cannot be accomplished without Marriott having, and actually exercising, uniform control over its local hotel properties with regards to their policies and procedures regarding traffickers and victims.

175. Marriott failed develop effective policies and/or failed to implement and enforce its own policy or policies and protect Plaintiff from being sex trafficked.

176. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Fairfield Inn & Suites Detroit Farmington Hill, Marriott has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of Plaintiff.

177. Marriott exercises actual control over its franchisees and subsidiaries, including the F.I. Farmington and Farmington Hospitality through control over the brand standards which are reflected through the franchise agreements entered into with each franchisee subsidiary or operating hotel.[41]

178. Marriott exerts dominion and control over its franchisees and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

    i. Sales Managers and Reservation Managers are required to devote their full time to the management and operation of the Hotel, and cannot be employed in any other capacity by the Franchisee or its Affiliates without Marriot's express written consent;

    ii. Franchisees are required to keep restaurants and lounges open and in normal operation for such minimum hours and days stipulated by Marriott;

[40] (See https://www.marriott.com/marriottassets/Multimedia/PDF/Corporate/HumanRightsStatement.pdf)
[41] See https://www.sec.gov/Archives/edgar/data/1329011/000119312506153824/dex1023.htm (last visited July 2, 2020).

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

     iii.    Franchisees are required to maintain in sufficient supply, and use at all times, certain food and beverage products and ingredients, supplies, paper goods, dinnerware and furnishings;

     iv.    Franchisees are prohibited from installing vending machines or video games on the premises.[42]

179.   Marriott also has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee:

     i.    "Franchisor may, at its option, terminate this Agreement and all rights granted hereunder without affording Franchisee any opportunity to cure the default" for material defaults of the franchise agreement."[43]

180.   Defendant Marriott may exercise or could have exercised control over the local hotel by:

     i.    distributing information to assist employees in identifying human trafficking;

     ii.    providing a process for escalating human trafficking concerns within the organization;

     iii.    requiring employees to attend training related to human trafficking;

     iv.    providing new hire orientation on human rights and corporate responsibility;

     v.    providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

     vi.    developing and holding ongoing training sessions on human trafficking; or

     vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

181.   The Fairfield Inn & Suites Detroit Farmington Hills where Plaintiff was trafficked was the actual and apparent agent of Marriott and together they offer, or offered, public lodging services in the hotel.  The agency relationship was created through Defendant Marriott's exercise of an ongoing

---

[42] See https://www.sec.gov/Archives/edgar/data/1329011/000119312506153824/dex1023.htm at pp. 7, 8, 9, (last visited July 2, 2020).

[43] See https://www.sec.gov/Archives/edgar/data/1329011/000119312506153824/dex1023.htm at p. 28 (last visited July 2, 2020)

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and systemic right of control over its branded hotels, beyond that which is necessary to maintain brand standards, by Defendant Marriott's operations including the means and methods of how its hotels conducted its daily business.

182.    An apparent agency also existed/exists between Defendant Marriott and the local Fairfield Inn & Suites Detroit Farmington Hills where Plaintiff was trafficked.  Defendant Marriott holds Marriott hotels – and its franchisees F.I. Farmington and Farmington Hospitality – to the public as possessing authority to act on its behalf.

183.    As alleged herein, the employees of Fairfield Inn & Suites Detroit Farmington Hills observed and were aware of Plaintiffs plight, yet the policies and procedures from Defendant Marriott to address this victimization were either inadequate to prevent her trafficking or were not properly implemented due to lack of training, education and or enforcement by the Marriott.

184.    As alleged herein and upon information and belief, the employees of the Fairfield Inn & Suites Detroit Farmington Hills aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to Defendant Marriott, including illegal website use, booking and reservation history, payment by cash for several rooms at a time and visits from multiple men throughout the day.

185.    Marriott was aware not only aware of Plaintiff's plight but also the failures of its own policies and procedures to protect her and prevent trafficking at the Fairfield Inn & Suites Detroit Farmington Hills where Plaintiff was trafficked.

186.    Given Defendant Marriott's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including the Fairfield Inn & Suites Detroit Farmington Hills, Defendant Marriott breached its duties in the following ways:

    i.    Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

    ii.    Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

    iii.    Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

53

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and/or

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

187. Marriott brands may kick delinquent hotels out of its system, including the Fairfield Inn & Suites Detroit Farmington Hills where Plaintiff was trafficked, since it is at the expense of terminating their royalty payments, it is seldom done. Nevertheless, this consequence is what provides Marriott the actual control over the Fairfield Inn & Suites Detroit Farmington Hills including control over how it confronts and deals with known traffickers and trafficking victims such as Plaintiff.

188. Marriott accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

189. Marriott knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

190. If defendant Marriott had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been available to Plaintiff's trafficker and no profits would have been grained.

191. Acceptance of these profits was Marriott's affirmation of the franchisees who operated the Fairfield Inn & Suites Detroit Farmington Hills – F.I. Farmington and Farmington Hospitality's - total inaction with regard to Plaintiff's trafficker and her victimization.

54

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

### iii. Knights Franchise is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent Akram Namou d/b/a Knight's Inn Sterling Heights

192. Defendant Knights Franchise franchised and licensed the Knight's Inn Sterling Heights.

193. Defendant Knights Franchise has and exercised control over the local hotel with respect to many issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

194. Defendant Knights Franchise is aware that human trafficking occurs at its local hotels and of how their local hotels have dealt with it.

195. Knight's Franchise failed develop effective policies and/or failed to implement and enforce its own policy or policies and protect Plaintiff from being sex trafficked.

196. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Knight's Inn Sterling Heights, Knights Franchise has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of Plaintiff.

197. Knights Franchise exercises actual control over its franchisees, including Akram Namou d/b/a Knight's Inn Sterling Heights, through control over the brand standards which are reflected through the franchise agreements entered into with each franchisee subsidiary or operating hotel.

198. Defendant Knights Franchise may exercise or could have exercised control over the local hotel by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v. providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

    vi. developing and holding ongoing training sessions on human trafficking; or

    vii. providing checklists, escalation protocols and information to property management

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

55

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

staff; or tracking performance indicators and key metrics on human trafficking prevention.

199. The Knight's Inn Sterling Heights where Plaintiff was trafficked was the actual and apparent agent of Knights Franchise and together they offer, or offered, public lodging services in the hotel. The agency relationship was created through Defendant Knights Franchise exercise of an ongoing and systemic right of control over its branded and licensed hotels, beyond that which is necessary to maintain brand or license standards, by Defendant Knights Franchise's operations including the means and methods of how its hotels conducted its daily business.

200. An apparent agency also existed/exists between Defendant Knights Franchise and the local Knight's Inn Sterling Heights where Plaintiff was trafficked. Defendant Knights Franchise holds Knights Franchise hotels – and franchisee Akram Namou d/b/a Knight's Inn Sterling Heights– to the public as possessing authority to act on its behalf.

201. As alleged herein, the employees of the Knight's Inn Sterling Heights observed and were aware of Plaintiff's plight, yet the policies and procedures from Defendant Knights Franchise to address this victimization were either inadequate to prevent her trafficking or were not properly implemented due to lack of training, education and or enforcement by Knights Franchise.

202. As alleged herein and upon information and belief, the employees of the Knight's Inn Sterling Heights were aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant Knights Franchise, including illegal website use, booking and reservation history, payment by cash for several rooms at a time and visits from multiple men throughout the day.

203. Knights Franchise was aware not only aware of Plaintiff's plight but also the failures of its own policies and procedures to protect her and prevent trafficking at the Knights Franchise hotel where Plaintiff was trafficked.

204. Defendant Knights Franchise breached its duties in the following ways:

    i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

    ii. Failed (altogether or adequately) to provide a process for escalating human

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

56

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

trafficking concerns within the organization;

iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and/or

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

205. Knights Franchise brands may kick delinquent hotels out of its system, including the Knights Franchise franchised hotel, Knight's Inn Sterling Heights, where Plaintiff was trafficked, since it is at the expense of terminating their royalty payments, it is seldom done. Nevertheless, this consequence is what provides Knights Franchise actual control over the Knight's Inn Sterling Heights, including control over how it confronts and deals with known traffickers and trafficking victims such as Plaintiff.

206. Knights Franchise accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

207. Knights Franchise knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

208. If defendant Knights Franchise had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been available to Plaintiff's trafficker and no profits would have been grained.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

57

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

209. Acceptance of these profits was Knights Franchise's affirmation of the Knight's Inn Sterling Height's total inaction with regard to Plaintiff's trafficker and her victimization.

### iv. Hawthorn Franchising is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent(s) at the Hawthorn Suites by Wyndham

210. Defendant Hawthorn Franchising exercised control over the local hotel with respect to many issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

211. Hawthorn Franchising failed develop effective policies and/or failed to implement and enforce its own policy or policies and protect Plaintiff from being sex trafficked.

212. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Hawthorn Suites by Wyndham Detroit Southfield, Hawthorn Franchising has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of Plaintiff.

213. Hawthorn Franchising knew or should have known that the hotels where Plaintiff was trafficked were in areas known for or prone to sex trafficking on and around the hotel premises, including when Plaintiff was trafficked.

214. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Hawthorn Franchising has repeatedly failed to stop or adequately address sex trafficking at said locations.

215. Defendant Hawthorn Franchising may exercise or could have exercised control over the local hotel by:

    i.    distributing information to assist employees in identifying human trafficking;

    ii.    providing a process for escalating human trafficking concerns within the organization;

    iii.    requiring employees to attend training related to human trafficking;

    iv.    providing new hire orientation on human rights and corporate responsibility;

    v.    providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

58

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

vi. developing and holding ongoing training sessions on human trafficking; or

vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

216. Hawthorn Franchising exercises actual control over its franchisees through control over the brand and license standards which are reflected through the franchise agreements entered into which each franchisee, which encompasses management companies said franchisees may hire as permitted under Hawthorn Franchising's franchise agreement.

217. An apparent agency also existed/exists between Hilton and their local hotels. Hilton held out the local brand hotels to the public as possessing authority to act on its behalf.

218. Hawthorn Franchising may kick noncompliant hotels out of its system, including where Plaintiff was trafficked, but because it is at the expense of terminating their royalty payments, it is seldom done.

219. Hawthorn Franchising accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

220. Hawthorn Franchising knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

221. If defendant Hawthorn Franchising had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been available to Plaintiff's trafficker and no profits would have been grained.

222. Acceptance of these profits was Hawthorn Franchising's affirmation of the local hotel's total inaction with regard to Plaintiff's trafficker and her victimization.

v. **Holiday Franchising is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent(s) at the Holiday Inn Express & Suites Southfield Detroit**

223. Defendant Holiday Franchising exercised control over the local hotel with respect to many

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

224.    Holiday Franchising failed develop effective policies and/or failed to implement and enforce its own policy or policies and protect Plaintiff from being sex trafficked.

225.    Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Holiday Inn Express & Suites Southfield Detroit, Holiday Franchising has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of Plaintiff.

226.    Holiday Franchising knew or should have known that the hotels where Plaintiff was trafficked were in areas known for or prone to sex trafficking on and around the hotel premises, including when Plaintiff was trafficked.

227.    Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Holiday Franchising has repeatedly failed to stop or adequately address sex trafficking at said locations.

228.    Defendant Holiday Franchising may exercise or could have exercised control over the local hotel by:

    i.    distributing information to assist employees in identifying human trafficking;

    ii.    providing a process for escalating human trafficking concerns within the organization;

    iii.    requiring employees to attend training related to human trafficking;

    iv.    providing new hire orientation on human rights and corporate responsibility;

    v.    providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

    vi.    developing and holding ongoing training sessions on human trafficking; or

    vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

229.    Holiday Franchising exercises actual control over its franchisees through control over the

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

brand and license standards which are reflected through the franchise agreements entered into which each franchisee, which encompasses management companies said franchisees may hire as permitted under Holiday Franchising's franchise agreement.

230.    An apparent agency also existed/exists between Holiday Franchising and their local hotels. Holiday Franchising held out the local brand hotels to the public as possessing authority to act on its behalf.

231.    Holiday Franchising may kick noncompliant hotels out of its system, including where Plaintiff was trafficked, but because it is at the expense of terminating their royalty payments, it is seldom done.

232.    Holiday Franchising accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

233.    Holiday Franchising knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

234.    If defendant Holiday Franchising had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been available to Plaintiff's trafficker and no profits would have been grained.

235.    Acceptance of these profits was Holiday Franchising's affirmation of the local hotel's total inaction with regard to Plaintiff's trafficker and her victimization.

    vi.    **ESA Inc. is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent(s) at the Extended Stay Properties**

236.    Defendant ESA Inc. exercised control over the local hotels with respect to many issues regarding the day-to-day operation of the properties, but also specifically with regard to the local hotels' policies on human trafficking.

237.    ESA Inc. failed develop effective policies and/or failed to implement and enforce its own policy or policies and protect Plaintiff from being sex trafficked.

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

238.    Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the ESA Properties were Plaintiff was trafficked, ESA Inc. has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of Plaintiff.

239.    ESA Inc. knew or should have known that the hotels where Plaintiff was trafficked were in areas known for or prone to sex trafficking on and around the hotel premises, including when Plaintiff was trafficked.

240.    Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, ESA Inc. has repeatedly failed to stop or adequately address sex trafficking at said locations.

241.    Defendant ESA Inc. may exercise or could have exercised control over the local hotels by:

    i.    distributing information to assist employees in identifying human trafficking;

    ii.    providing a process for escalating human trafficking concerns within the organization;

    iii.    requiring employees to attend training related to human trafficking;

    iv.    providing new hire orientation on human rights and corporate responsibility;

    v.    providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

    vi.    developing and holding ongoing training sessions on human trafficking; or

    vii.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

242.    ESA Inc. exercises actual control over its franchisees through control over the brand and license standards which are reflected through the franchise agreements entered into which each franchisee, which encompasses management companies said franchisees may hire as permitted under ESA Inc.'s franchise agreement.

243.    An apparent agency also existed/exists between ESA Inc. and their local hotels.  ESA Inc. held out the local brand hotels to the public as possessing authority to act on its behalf.

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

244. ESA Inc. may kick noncompliant hotels out of its system, including where Plaintiff was trafficked, but because it is at the expense of terminating their royalty payments, it is seldom done.

245. ESA Inc. accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

246. ESA Inc. knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

247. If defendant ESA Inc. had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been available to Plaintiff's trafficker and no profits would have been grained.

248. Acceptance of these profits was ESA Inc. affirmation of the local hotels' total inaction with regard to Plaintiff's trafficker and her victimization.

### vii. RRI is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent(s) at the RRI Properties

249. Defendant RRI exercised control over the local hotels with respect to many issues regarding the day-to-day operation of the properties, but also specifically with regard to the local hotels' policy on human trafficking.

250. RRI failed develop effective policies and/or failed to implement and enforce its own policy or policies and protect Plaintiff from being sex trafficked.

251. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the RRI Properties identified herein, RRI has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of Plaintiff.

252. RRI knew or should have known that the hotels where Plaintiff was trafficked were in areas known for or prone to sex trafficking on and around the hotel premises, including when Plaintiff was trafficked.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

253. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, RRI has repeatedly failed to stop or adequately address sex trafficking at said locations.

254. Defendant RRI may exercise or could have exercised control over the local hotel by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v. providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

    vi. developing and holding ongoing training sessions on human trafficking; or

    vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

255. RRI exercises actual control over its franchised, branded, owned, and/or operated through control over the brand and license standards which are reflected through the franchise agreements and operating manuals.

256. RRI may kick noncompliant hotels out of its system, including where Plaintiff was trafficked, but because it is at the expense of terminating their royalty payments, it is seldom done.

257. RRI accepted the profits from Plaintiff's trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with Plaintiff's trafficker.

258. RRI knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

259. If defendant RRI had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers,

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

rooms would not have been available to Plaintiff's trafficker and no profits would have been grained.

260.     Acceptance of these profits was RRI's affirmation of the local hotels' total inaction with regard to Plaintiff's trafficker and her victimization.

### E.  DEFENDANTS' LIABILITY UNDER THE TVPRA

#### i.      Defendants knowingly benefitted financially from the sex trafficking at the local hotels

261.     Aside from their unique position in this growing epidemic, Defendants have the highest obligation and statutory duty to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so.

262.     Defendants profited from the sex trafficking of Plaintiff and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture.

263.     Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI rented rooms to Plaintiff's traffickers knowing, or should have known, that they were using the room to harbor sex trafficking victims, physically assault them, and subject them to repeated exploitation as they was forced into sexual servitude.

264.     Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI knew, or should have known, that sex trafficking victims were being trafficked at Defendants' branded, franchised, or company-owned and operated hotels, and that the they were knowingly benefiting financially from said exploitation, because Plaintiff's traffickers frequented the Defendants' hotels

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and paid for the room rentals.

265. Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI profited from the sex trafficking of Plaintiff and knowingly or negligently aided and participated with Plaintiff's traffickers in their criminal venture. These Defendants took no action as Plaintiff repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and often displaying prominent bruising all over her person while in the constant presence of her trafficker.

266. Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI deliberately disregarded the implementation of best-known anti-trafficking policies, practices, and procedures to maintain profit.

267. Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI knew that their expenses would increase if they hired more security personnel and funded more training programs. Additionally, Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI would lose revenue by preventing human traffickers from renting rooms. The combination of increased expenses and lost revenue meant less profit. In fact, profits were the driving force of their hollow "No Room for Trafficking" campaigns, as they improved Defendants image without

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

66

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

any real impact on operations.

268. Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI all financially benefited from the sex trafficking of Plaintiff and other victims like her and developed and maintained business models that attract and foster the commercial sex market for traffickers (including buyers.)

269. Defendants G6 and its franchisee Warren Economy; Marriott and its franchisees F.I. Farmington and Farmington Hospitality; Knights Franchise and its franchisee Akram Namou; Hawthorn Franchising and its franchisee Akram Namou; Holiday Franchising and its franchisees Akram Namou and Southfield Hotel; ESA Inc. and its franchisee ESA Management; and RRI enjoy the steady stream of income that sex traffickers bring to their hotels.

270. Defendants financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

271. Defendants maintained their deficiencies to maximize profits by:

    i. Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

    ii. Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers; and/or

    iii. Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation.

    **ii. Defendants Participated in a Sex Trafficking Venture at and Through the Local Hotels**

272. There was a continuous business relationship or venture occurring through the rental of rooms between Plaintiff's traffickers and Defendants.

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

273.   Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging to Plaintiff's traffickers in which to harbor Plaintiff while he was trafficking her – whether doing so directly or as a franchisor or licensor and subsequently collecting profits thereon.

274.   Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from Plaintiff in which to harbor Plaintiff while she was being trafficked.

275.   Defendants all had the opportunity to stop Plaintiff's traffickers and offenders like him from victimizing Plaintiff and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

276.   Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their hotels.

277.   Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their hotels.

278.   Even though Defendants were aware of the best policies, practices, and procedures necessary to fight human trafficking and despite their part in formulating, assessing, and promoting the best policies, practices, and procedures together, they failed to implement them by, among other acts, omissions, and commissions described in this Complaint:

  i. Reducing the costs of training employees and managers on how to spot the signs of human trafficking;

  ii. Failing to refuse room rentals or report guests to law enforcement, and

  iii. Lowering a number of security costs and measures that could have combatted sexual trafficking and exploitation.

279.   To date, Defendants have failed to train all of their employees and/or agents to look for signs of trafficking.

280.   The failure to implement the best policies, practices, and procedures was not an oversight by Defendants.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

68

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

### iii.   Defendants knew or should have known sex trafficking ventures were operating out of their hotels

281.   Due to Defendants' failures to enact anti-trafficking policies and procedures to comply with the TVPRA, these Defendants, in essence, turned a blind eye to human trafficking. Therefore, these Defendants' failure to investigate and monitor human trafficking is sufficient to establish Defendants knew or should have known of human trafficking for commercial sex occurring at their brand properties, including the locations where Plaintiff was trafficked.

282.   Defendants knew, or should have known, that sex trafficking victims were being trafficked because they constantly entertained foot traffic at the rented room to appease the traffickers' daily quotas, the traffickers would help check her in then not proceed to the room, and the victim often displayed visible injury while seemingly never allowed to be alone. These behaviors indicated that sex traffickers were using the Defendants' hotels for a sex trafficking venture.

283.   As a direct and proximate result of these egregious practices on the part of Defendants, Plaintiff and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

### CAUSES OF ACTION

### COUNT ONE – 18 U. S. C. § 1595 ("TVPRA")

### (Against All Defendants)

284.   Plaintiff incorporates each foregoing allegations as if fully stated herein.

285.   Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

286.   Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595.   Specifically, Defendants had a statutory obligation not to benefit from a venture which they knew, or should have known, to engage in violations of 18 U.S.C. § 1591(a).   At all relevant times, Defendants breached this duty by facilitating human trafficking through their participation in the harboring of Plaintiff, her trafficker, and buyers in their hotels for the purposes of commercial sex induced by force, fraud, or coercion.

287.   Defendants benefited as a result of their acts, omissions, and/or commissions by keeping

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

operating costs low, maintaining the loyalty of traffickers and other individuals fueling the supply and demand of sex trafficking, and limiting mandatory regulations within their businesses. Moreover, Defendants knowingly benefited from Plaintiff's trafficking on each occasion they received payment or royalty fees for renting rooms at Defendants' hotels where Plaintiff, her trafficker, and numerous buyers were harbored. Defendants had actual or constructive knowledge of Plaintiff's trafficking but failed to implement or enforce anti-trafficking measures that would have helped her, and others like her. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of Plaintiff's injuries and damages.

288. Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels in violation of 18 U.S.C. § 1591(a).

### **PRAYER OF RELIEF**

WHEREFORE Plaintiff requests the jury selected to hear this case render a verdict in her favor on all counts alleged, and against each and every named Defendant, separately and severally, and that it awards damages to her in an amount which will adequately compensate her for the injuries and damages she sustained due to the Defendants' conduct outlined as follows:

    a. All available compensatory damages for the described losses with respect to each cause of action;

    b. Past and future medical expenses, as well as the costs associated with past and future life care;

    c. Past and future lost wages and loss of earning capacity;

    d. Past and future emotional distress;

    e. Consequential and/or special damages.

    f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g. Disgorgement of profits obtained through unjust enrichment;

    h. Restitution;

    i. Punitive damages with respect to each cause of action;

    j. Reasonable and recoverable attorneys' fees;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

k.  Costs of this action; and

l.  Pre-judgment and all other interest recoverable.

On the basis of the foregoing, Plaintiff also requests a jury be selected to hear this case and render a verdict for Plaintiff, and against Defendants, and that it awards damages to Plaintiff in an amount which adequately reflects the enormity of Defendants' wrongs, and which will effectively prevent other similarly caused acts.  Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deem appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 18, 2022

Respectfully submitted,

**Levin Simes Abrams LLP**

Brian J. Perkins
William H. Cross
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: bperkins@levinsimes.com
Email: wcross@levinsimes.com

***Attorneys for Plaintiff***

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

71

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL